# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 6, 2003 Session

## DONALD COPELAND FREEMAN v. LYNN DONNELL FREEMAN

**A Direct Appeal from the Circuit Court for Davidson County**
**No. 83D-339     The Honorable Muriel Robinson, Judge**

---

**No. M2002-02558-COA-R3-CV - Filed September 16, 2003**

---

This appeal involves a former husband's attempt to modify or terminate an alimony award to his former wife because of a change of circumstances. Primarily, husband asserts that he is retired, and his income and assets have been drastically reduced to the extent that he is unable to pay the alimony awarded. Wife filed a petition to hold husband in contempt for his failure to pay the alimony installments accrued. After a non-jury hearing, the trial court dismissed husband's petition and granted wife's petition holding husband in civil contempt of court. Husband appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Clark Lee Shaw, Nashville, For Appellant, Donald Copeland Freeman

Thomas K. Bowers, Nashville, For Appellee, Lynn Donnell Freeman

## OPINION

This case involves a petition to terminate or modify an award of alimony and an opposing motion for contempt for failure to comply with a court order. Appellant Donald Copeland Freeman ("Husband") and appellee Lynn Donnell Freeman ("Wife") were divorced on September 12, 1984, after 27 years of marriage.[1] The trial court's Final Decree of Divorce, *inter alia*, ordered Husband to pay Wife $1,200.00 per month alimony *in futuro*, such payments to be made until the death or remarriage of appellee.

---

[1] The trial court awarded Wife an absolute divorce on the grounds of "cruel and inhuman treatment."

Husband filed a petition on May 23, 2001[2] to modify or terminate his alimony obligation on the following grounds:

> a. The Petitioner is nearly 70 years old and no longer able to practice dentistry due to deteriorating hand eye coordination as a result of the aging process.

> b. The Petitioner has had colon cancer which forced him to sell his dental practice and cease practicing dentistry on a full time basis.

> c. Petitioner has attempted to practice dentistry on a part time basis without success due to his age.

> d. The Petitioner is entitled and has a right to be able to retire due to his age and to have his alimony reduced or terminated to accommodate same.

> e. The Respondent's need for alimony has been reduced or terminated due to her change in circumstances.

> f. The Petitioner does not have the ability to continue [to] pay alimony through no fault of his own.

On November 20, 2001, Wife filed a Petition for Contempt against Husband, asserting that Husband willfully and deliberately violated the trial court's September 12, 1984 Final Decree by failing to pay alimony for the months of October and November, 2001. Wife's petition charges Husband with both civil and criminal contempt, and seeks a judgment against Husband in the amount of $2,400.00, for two months alimony plus reasonable attorney's fees.

Husband's Answer to Wife's Petition for Contempt asserts several affirmative defenses, including the defenses that he did not "have the present ability to pay the amount demanded under a civil contempt prosecution," and that Wife failed to elect "whether she is proceeding on civil or criminal contempt." Husband further noted, in reliance upon a 2001 Tennessee Supreme Court decision, that retirement may constitute a "substantial and material change in circumstances so as to permit modification of a spousal support obligation."

---

[2] This is Husband's second petition to terminate his alimony obligation. The previous petition was filed January 25, 1998 alleging change of circumstances rendering Husband financially unable to pay the alimony. After an evidentiary hearing, the trial court denied Husband's petition, finding various facts establishing that Wife is still in need of the alimony award and that there had been no change of circumstances rendering Husband financially unable to comply with the award.

The trial court held a hearing on Wife's contempt petition on January 10, 2002. In an Agreed Order filed January 30, 2002, the trial court decreed in pertinent part:

> This matter came to be heard before the Honorable Muriel Robinson, Judge, on the10th day of January, 2002, upon an order for the Respondent to show cause, if any he has, why he should not be held in civil or criminal contempt for his failure to comply with the order of the Court to pay alimony to the Petitioner, and upon announcement to the Court of the terms and provisions of the agreement of the parties, upon representations by counsel and the record of the case as a whole, it appears to the Court that the following order is well taken:
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Respondent is guilty of civil contempt in violating the order of the Court to pay alimony to the Petitioner for the months of October, November and December, 2001, and for the month of January, 2002 in the amount of $1,200.00 for each aforesaid month or for a total of $4,800.00.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Petitioner is hereby awarded a judgment against the Respondent in the amount of $4,800.00, for which execution may lie if necessary.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Petitioner is hereby awarded judgment against the Respondent in the amount of $850.00 for reimbursement of her reasonable attorney fees, for which execution may lie, if necessary.

In addition to these awards, the trial court also granted Wife a lien against Husband's real property located at 106 Greenwood Avenue, Lebanon, Tennessee, in the amount of $5,650.00.

Wife filed a second Petition for Contempt on August 30, 2002, asserting that Husband failed to pay alimony for the months of February, March, April, May, June, July, and August, 2002, in "willful and deliberate contempt of the Court's order." Wife's petition again charged Husband with civil and/or criminal contempt and sought judgment against appellant for $8,400.00, the unpaid alimony, and an award for attorney's fees.

On September 10, 2002, the trial court entered an order to show cause which states:

1. You are hereby ordered to show cause, if any you have, why you should not be found guilty of civil or criminal contempt for failure to pay alimony as ordered by this Court for the months of February, March, April, May, June, July and August of 2002 and be incarcerated for 10 days consecutively on each contempt, for a total of 70 days in the Davidson County Jail pursuant to T.C.A. 29-9-103 or imprisoned until you purge your contempt pursuant to T.C.A. 29-98-104, pending further orders of the Court.

2. You are hereby ordered to show cause, if any you have, why the Petitioner should not have judgment against you for $8,400.00 and any further amounts owed at the time of the final hearing of this cause, pending further orders of the Court.

3. You are hereby ordered to show cause, if any you have, why the Petitioner should not be awarded her reasonable attorney fees and costs for prosecuting this contempt, pending further orders of the Court.

By agreed order entered September 25, 2002, Husband's petition and the show cause hearing for the petition for contempt were set for trial on October 10, 2002.

A hearing was held as scheduled. By Order filed October 22, 2002, the court found Husband guilty of civil contempt for failure to pay alimony pursuant to the terms set forth in the court's order. The court dismissed Husband's petition and awarded a judgment in favor of Wife in the amount of $10,800.00, representing the total amount of unpaid alimony owed by Husband. In support of its ruling, the court reiterated its findings of fact from the court's October 4, 1999 order, and cited the following additional facts:

[Wife] still has need for alimony.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

[Husband] has a right to retire, and he can retire voluntarily.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

[Husband] should have taken his Court ordered alimony obligation into consideration with his retirement, with his disposition of his pension and so forth.

[Husband] did not adequately prepare his case to present to the Court.

Court must adjudicate on the proof presented to it.

[Husband] has miserably failed to adequately prove his case.

[Husband] is evasive.

[Husband] claims he does not know the basic elements of his income or financial situation.

[Husband] simply says, "I can't pay."

To expect the Court to accept that position is unreasonable.

[Husband] does not know what his corporation's assets are even though he is the one who owns the corporation.

In addition to the judgment for alimony, the trial court awarded Wife a second lien on Husband's real property in the amount of $10,800.00, and ordered Husband to pay $2,500.00 toward Wife's attorney's fees.[3]

Husband appeals,[4] presenting the following issues for review, as stated in his brief:

1. The Trial Court committed reversible error when it failed to reduce or terminate alimony *in futuro*.

2. The Trial Court committed reversible error when it found Appellant in contempt.

3. The Trial Court committed reversible error when it awarded Appellee her Attorney Fees.

4. The Appellant should be awarded his attorney fees on appeal and in the Trial Court.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the

---

[3] The court's order directed Wife's attorney to file an affidavit of his legal fees with the court. Wife's counsel complied with the court's order, and filed an affidavit on October 22, 2002, stating that his total bill for legal services rendered in this matter was $5,200.00.

[4] Husband filed a Notice of Appeal on October 10, 2002, immediately following the trial court's ruling from the bench on Husband's second petition for modification or termination of alimony, and Wife's second petition for contempt.

evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d).

<h1 style="text-align:center">I.</h1>

Husband's first issue for review is whether the trial court erred in refusing to modify or terminate his alimony obligations to Wife.

T.C.A. § 36-5-101(a)(1) (Supp. 2002) provides that a court may not modify or terminate a spousal support award without first finding that a "substantial and material change in circumstances" has "occurred since the entry of the original support decree."

The party seeking relief on the grounds of a substantial and material change in circumstances has the burden of proving such changed circumstances warranting an increase or decrease in the amount of the alimony obligation. *Seal v. Seal*, 802 S.W.2d 617, 620 (Tenn. Ct. App. 1990).

In *Bogan v. Bogan*, 60 S.W.3d 721 (Tenn. 2001), our Supreme Court stated:

> [A] change in circumstances is considered to be "material" when the change (1) "occurred since the entry of the divorce decree ordering the payment of alimony," *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999), and (2) was not "anticipated or [within] the contemplation of the parties at the time they entered into the property settlement agreement," *id.*; *see also McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992); *Elliot v. Elliot*, 825 S.W.2d 87, 90 (Tenn. Ct. App. 1991). Moreover, a change in circumstances is considered to be "substantial" when it significantly affects either the obligor's ability to pay or the obligee's need for support. *See Bowman v. Bowman*, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991).

*Id.* at 728.

The primary issue in *Bogan* was "whether a good faith retirement, though voluntary and foreseeable, may constitute a substantial and material change in circumstances warranting a reduction in spousal support obligations." *Id*. at 727. The Court held:

> [T]hat an objectively reasonable retirement, taken in good faith and without intent to defeat the support obligation, does constitute a substantial and material change in circumstances so that a modification of support obligations may be considered. We also hold, however, that actual modification of the award, if any, is addressed to the trial court's discretion after considering the relevant factors listed in Tennessee Code Annotated section 36-5-101(d).

*Id.* at 727.

Upon examination of the record and the testimony in this case, we find that Husband did not satisfy his burden of proving that his retirement constituted a substantial and material change of circumstances so as to justify termination or modification of his spousal support obligation. We find that Husband provided inadequate proof that his current situation varies substantially and materially from his circumstances on September 12, 1984, the date of the court's Final Decree of Divorce and initial award of alimony.

We do not dispute that Husband certainly has a right to retire or that he would conceivably be entitled to a modification or termination of his support obligation if he introduced sufficient evidence into the record to demonstrate that his retirement, in fact, resulted in a substantial and material change in circumstances and that such retirement was "objectively reasonable" under the "totality of the circumstances." *See Bogan*, 60 S.W.3d at 729.

Although Husband filed an Income and Expense Statement on October 10, 2002 detailing his monthly expenses for the year 2002,[5] there is no evidence in the record as to Husband's income or expenses as of September 12, 1984, the date of the trial court's Final Decree of Divorce ordering Husband to pay Wife $1,200.00 in monthly support. Husband's income tax returns for the years 2000 and 2001 were entered as exhibits in this case, listing annual total income for these years as $81,900.00 and $69,779.00 respectively.[6] Again, there is no evidence in the record as to Husband's individual income for 1984 nor was the proof sufficient for establishing his individual income for 2000 and 2001.

Husband's Income and Expense Statement further fails to include monies earned for sculptures sold by appellant as part of his net monthly income, listing as Husband's only income the $1,082.00 in social security payments he receives each month.[7] Husband testified that he was paid $4,500.00 for a sculpture that he created. When questioned as to payments or commissions received

---

[5] Husband lists his total expenses as $965.00 per month. This amount does not include the $1,200.00 in monthly support owed to Wife pursuant to the court's Final Decree of Divorce. We note that this statement does not include as expenses tithes made by Husband to his church. Husband testified that he gave $8,500.00 to his church over a period of approximately two years. These tithes, according to Husband, came from his individual funds.

[6] We note that Husband filed joint income tax returns for these years, including income earned by his current wife, Mary Freeman.

[7] In testifying that his primary source of income consists of monthly social security benefits, Husband noted that he has no remaining pension income, having depleted these funds for the purpose of paying taxes and alimony.

for other sculptures, Husband failed to refute or explain whether he had in fact received a $10,000.00 commission for one work, and an undisclosed sum for another.

The trial court's Final Order denying Husband's second petition for termination or modification of alimony, notes that Husband had a successful dental practice which he eventually sold for $180,000.00,[8] and notes that Husband had paid off all of his individual and business debts. There is no evidence in the record to indicate whether any of the $180,000.00 received by appellant for the sale of his practice still remains, aside from Husband's vague assertion that his primary source of income is the social security payments that he receives each month.

With regard to physical assets, the court's Final Decree of Divorce noted that Husband owned "motorcycles and vehicles" in addition to the 106 Greenwood Avenue property. The court's decree additionally awarded Husband a sole interest in real property identified as "an Auto Parts Building located in Lebanon, Tennessee, [and] a lot located on Donelson Pike in Donelson, Tennessee." Husband has provided no evidence as to the value of the motorcycles, vehicles, Auto Parts Building, or Donelson Pike lot, nor is there any evidence as to whether Husband still owns said property.

Husband acknowledges that he owns his home located at 106 Greenwood Avenue, Lebanon Tennessee. According to Husband, the home was valued at $89,000.00 in 1999. Husband further testified that he filed a Corporate Tax Return in 2001 listing $11,000.00 in corporate assets from his orthodontics practice but, when questioned, was unable to identify the nature of his corporate assets.

Prior to the parties' divorce, the court noted that Husband was "a very successful" and "well respected dentist." In his initial petition to terminate alimony, Husband noted that he was forced to sell his "dental practice due to health related problems." Husband's second petition elaborates on this point, stating that "Petitioner has had colon cancer which forced him to sell his dental practice and cease practicing dentistry on a full time basis." In denying Husband's petitions, the trial court twice noted that "Petitioner offered no competent medical testimony to substantiate his allegation of ill health."

The record reveals conflicting testimony and evidence presented by Husband regarding his ability and present intent to continue working in the orthodontics field. Husband testified on direct examination that he was in "pretty good health," but noted that he did not think he should be engaged in the practice of orthodontics. Husband's second petition noted several reasons supporting his decision to retire from practice, including the fact that "Petitioner is nearly 70 years old and no longer able to practice dentistry due to deteriorating hand eye coordination as a result of the aging process." In explaining why he recently ceased working for another doctor, Husband testified:

Q: You parted ways with Dr. Anderson?

---

[8] In his initial petition to terminate alimony, Husband stated that he was paid in installments for his practice, the last installment payment being received in June 1998.

A: He said I was from a different era.

Q: Different era. In other words, instead of those nasty bands and stuff you put on my teeth when I was 16, they've got some fancy ways of doing it now and you don't know how to do that, do you?

A: Oh, I just couldn't come up to snuff, whatever.

On cross examination, Husband testified that his license to practice orthodontics was "in the process of being renewed." Husband provided no explanation for his decision to renew the license in light of statements that he was unable or unwilling to continue practicing. In conflict with earlier statements made during his direct examination, Husband further testified that he was able to work, stating:

Q: You don't have a medical expert to say you can't work; you can work if you wanted to, is that right?

A: Yes, I can. If I had a place to work.

The trial court found that appellant was "evasive" in his answers before the court, and the record supports this finding. When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id.*; *In re Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

From the plain language of the court's Final Order, it is apparent that the trial judge found Husband to be lacking in credibility, and was thereby unwilling to assign faith or weight to Husband's testimony regarding changed circumstances. We find no evidence in the record to indicate that the trial judge abused her discretion in refusing to credit Husband's testimony.

The record indicates that Husband failed to present sufficient evidence to prove that his retirement constitutes a substantial and material change in circumstances such as to justify termination or modification of his support obligation. Husband has provided no evidence or testimony of what his income and expenses were at the time the trial court first ordered payment of alimony, has failed to explain or account for various physical assets and pieces of real property recognized, and was evasive in explaining his present income. He failed to introduce reliable evidence of his current income, neglecting to account for monies earned from sculptures sold and commissioned, and failing to identify $11,000.00 in corporate assets. Finally, Husband has provided conflicting evidence as to his abilities and intentions to continue working in the orthodontics field. Quite simply, Husband has failed to provide a factual basis from which this Court can compare his

circumstances as they existed at the time of the trial court's Final Decree of Divorce ordering payment of alimony, to his present day circumstances.

## II.

Husband next presents the issue of whether the trial court "committed reversible error when it found Appellant in contempt." Specifically, Husband asserts that the trial court erred in finding him in civil contempt of court where Wife's contempt petitions failed to elect either civil or criminal contempt, instead charging him with both.

It is undisputed that Wife's contempt petitions charge Husband with both civil and criminal contempt. The trial court, in ruling upon Wife's petitions, twice found Husband in civil contempt for failure to pay alimony in accordance with the court's order. The trial court's Final Order of October 22, 2002, finding Husband guilty of civil contempt pursuant to Wife's second contempt petition, stated:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED
> that the Petitioner is guilty of willful civil contempt for his failure to pay alimony to the Respondent as ordered by the Court.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED
> that the Petitioner is hereby ordered immediately into custody and shall be released only upon satisfaction of the following conditions:
>
> 1) Post proper appeal notice.
>
> and/or
>
> 2) Petitioner shall remain in custody until he pays the October, 2002, alimony payment of $1,200.00 to the Respondent in the event of no appeal.[9]

T.C.A. § 29-9-102 (2000) authorizes Tennessee courts to inflict punishment for contempts of court in specific cases and, as pertinent herein, provides:

> **29-9-102. Scope of power. –** The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
>
> \*   \*   \*

---

[9] We note that the Final Order entered as part of the Technical Record in this case includes written changes from the trial judge. The quoted language reflects the changes made by the trial judge to the order prior to entry.

(3) The willful disobedience or resistence of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts.

"Appellate courts review a trial court's decision to impose contempt sanctions using the more relaxed 'abuse of discretion' standard of review." **McDowell v. McDowell**, No. M2000-00164-COA-R3-CV, 2001 WL 459101, at *5 (Tenn. Ct. App. May 2, 2001) (quoting **Sanders v. Sanders**, No. 01A01-9601-GS-00021, 1997 WL 15228, at *3 (Tenn. Ct. App. Jan. 17, 1997) (citing **Hawk v. Hawk**, 855 S.W.2d 573, 583 (Tenn. 1993))). The court of appeals has "appellate jurisdiction over civil or criminal contempt arising out of a civil matter." **See** T.C.A. § 16-4-108(b) (1994).

There is no real dispute in this case that Husband's failure or refusal to comply with the court's decree ordering payment of alimony constituted civil contempt.[10] Rather, Husband's allegation of error is premised on the assertion that Wife's contempt petitions wrongfully and

---

[10] In her concluding statements from the bench, the trial judge explained her finding of civil contempt, noting:

> I find that [Husband is] in willful contempt for failure to pay. This is civil contempt. And he's going to be taken into custody.
>
> As soon as he complies with this order and pays the October [alimony] payment, then he'll be released. Now –
>
> MR. SHAW: That's not in the pleadings, Your Honor. I object to that. That's not in the pleadings.
>
> THE COURT: Well, let's see what the pleadings are. And you should have –
>
> MR. SHAW: Criminal contempt. That's what I thought we were prosecuting.
>
> MR. BOWERS: This is civil or criminal –
>
> THE COURT: It's better for him to be in civil contempt.
>
> MR. SHAW: Ma'am – all right. I've entered my objection.
>
> THE COURT: All right. Civil contempt. We're going to take him into custody until he complies with the order which means makes the October payment.

The trial court's Final Order of October 22, 2002 reflects the court's finding of civil contempt.

-11-

unconstitutionally charged appellant with both civil and criminal contempt. Husband asserts that Wife is required to elect to proceed on either criminal or civil contempt prior to trial, citing *Cooner v. Cooner*, No. 01-A-01-9701-CV00021, 1997 WL 625277 (Tenn. Ct. App. Nov. 14, 1997), as authority for this contention.

In *Cooner*, former husband brought a contempt petition against former wife charging criminal and civil contempt on the grounds that wife deprived husband of several physical possessions and further refused to return the parties' minor child to husband's custody. *Id*. at *2. The trial court determined that wife's conduct constituted a willful and "flagrant disregard" of the court's orders, and thereby found her in criminal contempt. *Id*. at *3. Upon reading the appellate court's rendition of the procedural background in *Cooner*, we find no reference to the trial court's handling of former husband's civil contempt charge. Former husband's civil contempt charge was apparently not considered by the appellate court.

Former wife appealed the trial court's finding of criminal contempt. *Id*. The appellate court reversed the trial court's finding of criminal contempt on substantive and procedural grounds, finding that former wife did not receive proper notice of the criminal contempt charge pursuant to Tenn. R. Crim. P. 42(b). *Id*. at *7. With regard to the procedural errors committed in the trial court, the appellate court noted:

> Civil and criminal contempt proceedings should not be tried simultaneously because of the significant differences in the respective burdens of proof and procedural rights accorded to the person accused of contempt. Proceedings of indirect criminal contempt cannot be commenced without the notice required by Tenn. R. Crim. P. 42(b). Giving this notice at an early stage eliminates any possible confusion concerning the nature of the proceedings and better enables the alleged contemner to invoke his or her procedural rights. *Jones v. Jones*, App. No. 01A01-9607-CV-00346, 1997 WL 80029, at *3 (Tenn. Ct. App. Feb. 26, 1997) (No Tenn. R. App. P. 11 application filed).
>
> ****************************************************
>
> The procedure employed by the trial court in this case was fundamentally flawed because of the lack of notice required by Tenn. R. Crim. P. 42(b) and because the trial court was apparently attempting to consider Mr. Cooner's petitions for criminal contempt and for civil contempt simultaneously. Even though Ms. Stephens

did not frame the issue precisely in these terms, we should take it up in order to prevent prejudice to the judicial process and because the procedural oversight involved substantial rights and more likely than not affected the outcome of the proceeding.

*Id*. at *6-7.

In the case at bar, while Wife's petition charged Husband with both civil and criminal contempt, the record reflects that the trial court did not attempt to try adjudicating both contempts simultaneously but confined her attention to civil contempt only. The mere allegation in Wife's petition seeking both civil and criminal contempt does not prejudice the judicial process and allows the petitioner to elect to proceed on one or the other, providing, of course, that the proper notice is afforded to the respondent. In this case, a show cause order was issued by the trial court, and Husband failed to show good cause why he should not be found in civil contempt. The trial court properly acted accordingly. The trial court did not commit reversible error in adjudicating the issue of civil contempt pursuant to Wife's petition and the show cause order.

### III.

We combine Husband's final two issues, addressing first Husband's question of whether the trial court erred in awarding Wife attorney's fees. The trial court's decision to award attorney's fees is considered an award of alimony. ***Long v. Long***, 957 S.W.2d 825, 829 (Tenn. Ct. App. 1997). An appellate court will not interfere with the trial court's decision to award attorney's fees unless it is shown that "manifest injustice would be done if the award is allowed to stand." ***Id***. Based on our reading of the record and the transcripts in this case, we are unable to find that the trial court abused its discretion in awarding Wife attorney's fees. Husband knowingly failed to comply with a court order directing him to pay alimony support in the amount of $1,200.00 per month. Moreover, Wife was the prevailing party with regard to the contempt petitions and Husband's petitions to terminate or modify alimony. For these reasons, we affirm the trial court's award of attorney's fees to Wife.

With respect to Husband's request for payment of attorney's fees incurred by appellant at the trial and appellate court levels, we find no evidence in the record to indicate that the trial court abused its discretion in failing or refusing to award Husband, as the non-prevailing party, attorney's fees. We therefore find Husband's final issue without merit.

### IV.

The Final Order of the trial court is affirmed, and the case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed to appellant, Donald Copeland Freeman, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.