IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 12, 2005 Session

## CHARLENE SINOR v. TIMOTHY BARR

**Appeal from the Juvenile Court for Davidson County**
**No. 46-91-89     Betty Adams Green, Judge**

_____

**No. M2004-02168-COA-R3-JV - Filed February 7, 2006**

_____

Charlene Sinor ("Petitioner") filed a petition for contempt seeking, in part, to have Timothy Barr ("Respondent") found in criminal contempt for his failure to pay child support as ordered. After a trial, the Trial Court held Respondent in criminal contempt finding six violations of the Trial Court's orders. Respondent appeals to this Court claiming that his conviction of criminal contempt was based upon an improper evidentiary presumption and insufficient evidence. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

Mike J. Urquhart, Nashville, Tennessee for the Appellant, Timothy Barr.

Paul G. Summers, Attorney General and Reporter and Warren Jasper, Assistant Attorney General, Nashville, Tennessee for the Appellee, Charlene Sinor.

# OPINION

## Background

Petitioner is the mother of a child ("T.R.S.") born on April 29, 1988. Respondent was held to be the father of T.R.S. in an Order of Paternity entered May 4, 1989. By order entered May 23, 1989, Respondent was ordered, *inter alia*, to pay weekly child support payments of $60.00, and to pay $5,366.03 in child support dating back to the date of birth of T.R.S.

Petitioner filed a petition for contempt in October of 1989, requesting that Respondent be held in contempt of court for his failure to pay child support as ordered. An attachment was entered on this petition, but apparently no further action was taken. Petitioner filed a second petition for contempt in February of 2001. The case was heard by a referee and an order entered on August 2, 2001, finding and holding, *inter alia*, that Respondent was guilty of thirteen violations of orders of the court for his failure to pay child support. Sentencing on the August 2, 2001 order was delayed pending potential compliance, and ultimately Respondent was found to be in compliance and the sentence was deemed served.

On June 15, 2004, Petitioner filed another petition for contempt seeking, in part, to have Respondent held in criminal contempt for his failure to pay child support as ordered. The case was heard before a referee on August 30, 2004. At the hearing, Petitioner testified regarding her contacts with Respondent during the two plus years prior to the hearing. She testified that Respondent called her in December of 2001, and asked to see T.R.S. Petitioner testified that she then told Respondent to call child support services. Petitioner admitted that during that telephone conversation, she and Respondent did not talk about child support. Petitioner testified that she called Respondent once in May or June of 2003, "when I told him his son needed to come and stay with him for a while, I thought. I was having a lot of problems with him at the time. He said that now is not a good time." Petitioner testified that she and Respondent did not talk about child support during that telephone conversation either. Petitioner testified that she had no contact with Respondent after September of 2003.

Petitioner admitted she has no evidence that Respondent is currently able-bodied and capable of pursuing employment. She testified: "I did bring in pictures when I came to court in 2001 of the signs that [Respondent] had on the side of the street for custom painting, house painting and stuff like that, …." However, Petitioner testified that she does not know where Respondent has worked since December of 2001.

Petitioner also testified that she has a lien on a piece of real property owned by Respondent.[1] Petitioner testified that she called the Register of Deeds and confirmed that she still has the lien. Petitioner testified that her lien has not been satisfied.

On September 13, 2004, the referee entered an order holding Respondent in criminal contempt for six violations of orders to pay child support. Specifically, Respondent was found in contempt for not making his child support payments in October, November, and December of 2003, and in January, February, and March of 2004. The September 13 order made the finding of contempt "a final order subject to appeal," but suspended the sentence pending potential compliance. The September 13 order incorporated by reference the referee's Supplemental Findings and Order on Contempt which were entered September 15, 2004. A Confirmation Order was entered by the Juvenile Court ("Trial Court") confirming the findings of the referee and making the referee's orders the final orders of the Trial Court. The supplemental findings entered September 15, stated:

> The proof presented at trial was very sparse. The essence of the hearing primarily pertained to the pay records. During the hearing the only witness called was [Petitioner], the petitioner and custodial parent. The only physical evidence presented was the pay records. The petitioner testified that she had no additional information regarding the respondent's ability to work or actual work he has performed since the 2001 contempt hearing. During her testimony she referred back to exhibits entered at the August 1, 2001 hearing. Specifically she referred to Exhibits 1 and 2 indicating that the respondent was self employed in the home painting business. That evidence was the basis for the findings of contempt at the prior hearing. The petitioner testified that she contacted the respondent in May or June of 2003 seeking help in raising their child. She was having difficulties with the child and requested that the respondent take the child for a period of time. She said that the respondent refused her request. She testified that she never contacted the respondent when payments stopped in September of 2003 and had not (sic) contact with him through the filing of the petition. From September of 2003 until March of 2004 there was no specific evidence that the respondent could or could not make these payments. There was no proof presented for this period. The respondent chose not to testify in this proceeding as he invoked his 5th amendment privilege. Counsel for the respondent argues that the petitioner has the burden of putting on *specific proof* that the respondent had the ability to work and pay during the 6 months during which no payments were made. Counsel for the [Petitioner] argues that the court can

---

[1] The transcript provided in the record on appeal is missing page 14. While the testimony on page 15 suggests that Petitioner gave some testimony regarding Respondent's real property on that missing page, we are unable to ascertain the substance of the missing testimony. Petitioner asserts in her brief on appeal that the property upon which she holds a lien has been used as rental property. However, the record is devoid of evidence showing that the property is rental property, that it currently is income producing, or how much, if any, income Respondent receives from this source. Our attempts to have a copy of the missing page 14 found and included in the record were unsuccessful. We can rely only upon the proof in the record before us. The parties have the burden of providing an adequate record on appeal and must suffer the consequences if they fail to do so.

rely on its prior findings of the respondent's ability to pay and that no specific proof for this period of time is required. For the reasons further elaborated the court agrees with the counsel for [Petitioner].

A case of criminal contempt differs from other criminal proceedings.…A criminal proceeding starts with nothing and the case has to be established fact by fact. A criminal contempt proceeding starts with a court history involving findings and orders that have not been challenged. Therefore, the starting point is different. It would be a ridiculous proposition to suggest that the court turn a blind eye to its prior findings in assessing the issue of contempt. So, for example, as mentioned before, the mere reference to the prior order is generally sufficient to prove knowledge of the order. The petitioning party does not have to reestablish service of process, presence of the respondent, or receipt of the prior court order by extrinsic evidence. As noted before, there is, if you will, a "presumption" that one who is present in court who is given or mailed a copy of an order, has knowledge of the contents of the order. That "presumption" then shifts the burden to the respondent to put on proof that he or she did not have knowledge of the order. Once sufficient proof is taken that would create a reasonable doubt that the respondent had knowledge of the order the petition is defeated.

Likewise, the court can rely on the prior findings of ability to earn. In the prior contempt proceedings, on August 1, 2001, the court reiterated the findings from 1989, that the respondent was able to pay support of $260 per month. This amount of support translates on the guidelines to around $8.40 per hour. The evidence of payments during his 130 day probationary period further supports this finding. Additionally, after that case concluded the respondent continued making payments in line with those prior findings. It was not until September 2003 that the payments ceased abruptly and completely with no payments being made during the following 6 months. This finding remains unchallenged to this day. The respondent has never filed a petition to modify his support. No evidence was presented at trial indicating that the respondent was unable to make the payments. The petitioner had no specific evidence as to any employment or income as the respondent has traditionally been self employed as a house painter. The respondent chose not to testify in this proceeding as he invoked his 5th amendment privilege. Therefore, the prior findings remain unchallenged and uncontroverted.

Respondent appeals to this Court.

### Discussion

Although not stated exactly as such, Respondent raises two issues on appeal: 1) whether the Trial Court erred by utilizing an evidentiary presumption that shifted the burden of proof

to Respondent; and, 2) whether the conviction of criminal contempt was based upon insufficient evidence.

As this Court recently observed in *Barber v. Chapman*, No. M2003-00378-COA-R3-CV, 2004 Tenn. App. LEXIS 111 (Tenn. Ct. App. Feb. 23, 2004), *no appl. perm appeal filed*:

> In a criminal contempt case, the guilt of the accused must be established beyond a reasonable doubt. *Black v. Blount*, 938 S.W.2d 394 at 398 (Tenn. 1996) (citing *Robinson v. Air Draulics Engineering Co.*, 214 Tenn. 30, 377 S.W.2d 908, 912 (Tenn. 1964). However, on appeal, individuals convicted of criminal contempt lose their presumption of innocence and must overcome the presumption of guilt. "Appellate courts do not review the evidence in a light favorable to the accused and will reverse criminal contempt convictions only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt." *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993) (citing Tenn. R. App. P. 13(e)). Furthermore, appellate courts review a trial court's decision of whether to impose contempt sanctions using the more relaxed abuse of discretion standard of review. *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993).

*Barber*, 2004 Tenn. App. LEXIS 111, at *8. *Accord*, *Freeman v. Freeman*, No. M2002-02558-COA-R3-CV, 2003 Tenn. App. LEXIS 660, at * 22 (Tenn. Ct. App. Sept. 16, 2003), *appl. perm. appeal denied March 22, 2004* (stating: "Appellate Courts review a trial court's decision to impose contempt sanctions using the more relaxed 'abuse of discretion' standard of review.… The court of appeals has 'appellate jurisdiction over civil or criminal contempt arising out of a civil matter.' *See* T.C.A. § 16-4-108(b)…" (citations omitted)).

The Trial Court found and held Respondent in criminal contempt under Tenn. Code Ann. § 29-9-102, which provides, in pertinent part:

> **29-9-102. Scope of Power** – The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
>
>     \*    \*    \*
>
> (3) The willful disobedience or resistence of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts;

Tenn. Code Ann. § 29-9-102(3) (2000). "Thus, to find contempt under this statute, a court must find the misbehavior, disobedience, resistence, or interference to be wilful." *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000). To be able to make a determination about whether Respondent's failure to pay was wilful, the Trial Court had to determine if Respondent had the ability to pay when the payments were due. *See id*.

We first address whether the Trial Court erred by utilizing an evidentiary presumption that shifted the burden of proof to Respondent. In essence, Respondent argues that the Trial Court presumed that Respondent had the ability to earn based upon the prior Trial Court orders and improperly shifted the burden of proof to Respondent to prove that he did not have the ability to pay. Petitioner, however, argues that the Trial Court did not apply any presumption but simply took the facts that had been established in the previous contempt proceedings and considered them as established facts. Specifically, the Trial Court stated that it "can rely on the prior findings of ability to earn." We agree that the Trial Court can rely on its prior findings of 2001, relevant to Respondent's ability to earn. However, that reliance has a limit and that limit is that those findings are no more than Respondent had the ability to earn as of the date relevant in the 2001 hearing.

Even if Petitioner is correct and the Trial Court applied no presumption but merely considered established facts, we still must decide whether the evidence is sufficient to support the Trial Court's finding of contempt beyond a reasonable doubt. This brings us to Respondent's second issue, whether the conviction of criminal contempt was based upon insufficient evidence. Respondent argues, in part, that Plaintiff failed to prove beyond a reasonable doubt that Respondent had the ability to pay and wilfully failed to pay.[2] We agree.

As noted in the supplemental findings entered on September 15, "[t]he proof presented at trial was very sparse." Our review of the record shows the record is even less than sparse and instead is devoid of evidence showing that Respondent currently is working or is capable of working, or currently has any income whatsoever. Instead, Petitioner relied solely upon evidence presented during the previous contempt proceedings and the facts as found by the Trial Court in 2001. Petitioner admitted that she does not know where Respondent has worked since December of 2001. During the previous contempt proceedings in 2001, Petitioner produced proof in the form of Respondent's business card and a photograph of the business sign used by Respondent at that time. Petitioner attempted to rely on this same evidence in her testimony in the instant case. However, Petitioner admitted that she had no evidence showing that Respondent even currently is capable of working. Petitioner did not introduce any business card or business sign used by Respondent any time after the 2001 hearing. In addition, although Petitioner claims that Respondent has income from rental property, as we discussed above, no evidence of this was produced. Petitioner simply put on no proof regarding Respondent's current situation. The Trial Court's findings of fact specifically stated that "[f]rom September of 2003 until March of 2004 there was no specific evidence that the respondent could or could not make these payments."

---

[2] The Trial Court found that Respondent was aware of the court order to pay child support. The evidence supports this finding and Respondent concedes on appeal that this fact is not in dispute.

Petitioner presented no proof to the Trial Court of Respondent's ability to pay other than the established fact that he had such ability on August 1, 2001. The fact that Respondent was employed and had income over two plus years ago, standing alone, is insufficient to prove criminal contempt beyond a reasonable doubt. The passage of time between the prior contempt hearing and this contempt hearing simply was too long to assume that Respondent's situation has not changed. If the previously established evidence showed that Respondent was employable and had income perhaps just two weeks before the relevant time now at issue, then the evidence would carry more weight. However, much can happen in two plus years. We hold that the evidence is insufficient to support the Trial Court's finding of contempt beyond a reasonable doubt. As such, we reverse the conviction of criminal contempt.

## **Conclusion**

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellee, Charlene Sinor.

_____
D. MICHAEL SWINEY, JUDGE