IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 5, 2013

**DON MABEE v. GAYLE MABEE**

**Appeal from the Chancery Court for Franklin County**
**No. 18900     Jeffrey Stewart, Chancellor**

**No. M2012-02430-COA-R3-CV - Filed June 27, 2013**

The ex-husband of the defendant filed a petition to terminate alimony. The parties' 2010 marital dissolution agreement provides that the petitioner shall pay alimony to his ex-wife for a specified period or upon her cohabitating with another man, and petitioner alleges that the defendant has been cohabitating with another man. The trial court made findings that, although the defendant had an intimate relationship with another man, she was not cohabitating as that term is defined; thus, the trial court denied the petition and awarded the defendant an arrearage judgment for alimony the petitioner failed to pay. Finding the trial court applied the correct legal standard and the evidence does not preponderate against the trial court's findings, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, J.J., joined.

Michael D. Hall, Winchester, Tennessee, for the appellant, Don Mabee.

Gayle Mabee, Tullahoma, Tennessee, Pro Se.

**OPINION**

Don Mabee, the petitioner, and Gayle Mabee, the defendant, divorced in 2010. Pursuant to the Marital Dissolution Agreement ("MDA"), the petitioner was obligated to pay alimony to the defendant for a specified number of years unless one of three events occurred, in which event his obligation to pay alimony would terminate. The relevant alimony provision in the MDA reads: "This spousal support will end after the designated 12 year period agreed upon or upon the Wife's death, remarriage or cohabitation with another man."

Pursuant to the MDA, the petitioner paid his alimony obligation monthly until December of 2011, at which time he stopped paying believing he was relieved of making future alimony payments due to the defendant cohabitating with another man, Rod Brown. One month later, on January 3, 2012, the petitioner commenced this action. The defendant filed a response denying that she had cohabited with another man and sought a judgment for an arrearage of alimony payments that were due and not paid.

The petition was tried on August 3, 2012, at which time the court heard considerable evidence from several witnesses. The petitioner; the defendant; Rod Brown, the defendant's boyfriend; Joyce Cunningham, a neighbor of the defendant; and Kim Garbler, a private investigator retained by the petitioner testified. Ms. Cunningham and Ms. Garbler both testified that they saw Mr. Brown visit the defendant's apartment on numerous occasions and stated that he stayed all night with her on numerous occasions. Neither Ms. Cunningham nor Ms. Garbler had any knowledge concerning whether Mr. Brown treated the defendant's apartment as his abode, whether he kept clothes or toiletries at her apartment, whether he was helping to support the defendant, or whether she was helping to support Mr. Brown. The petitioner had no personal knowledge of the defendant's living arrangements or whether the defendant or Mr. Brown were financially supporting the other because the petitioner was living in Idaho at all times material to the matters at issue. Photographs, postcards, letters and postings from the defendant's Facebook page were introduced at trial, which revealed that the defendant and Mr. Brown were romantically involved and that he was frequently with the defendant.

The defendant testified that she had an intimate relationship with Mr. Brown and that he had stayed overnight at her apartment on numerous occasions, but she emphatically denied that she lived with him or that he or she had been supporting the other. Mr. Brown testified that he never lived with the defendant and that his permanent residence is his mother's home where he resides with his mother and her boyfriend. He admitted having an intimate relationship with the defendant and that he stayed overnight at the defendant's apartment on numerous occasions before she was evicted from her apartment in January 2012 for failure to pay the rent. Since her eviction in January 2012, the defendant has been homeless, sleeping outdoors at various locations. Mr. Brown stated that the defendant was permitted to come to his mother's home, where he resided, to take a shower and change clothes; he also stated the defendant was permitted to spend the night at his mother's home on evenings in the winter when it was particularly cold. He denied that he kept any clothes or toiletries at her apartment or that she kept clothes or toiletries at his mother's home. He stated that while he is in a romantic relationship with the defendant, he has no plans to live with or to get married to the defendant. In fact, Mr. Brown stated that he is married, although not living with his wife, and that he had no intentions of getting a divorce.

At the conclusion of the hearing, the trial court informed the parties that they could submit additional information prior to the ruling date, which he set for August 17, 2012. The court ruled from the bench on the ruling date, which is preserved in a verbatim transcript. In its ruling, the court summarized the evidence, discussed the alimony provision in the MDA, and identified the legal principles that applied to the issue, specifically those addressed in *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561 (Tenn. Ct. App. 2003), which also involved a petition to terminate alimony based upon a cohabitation provision in a marital dissolution agreement.

After distinguishing the facts of this case from those in *Honeycutt*, including, *inter alia*, the substantial difference in the number of evenings the intimate companions stayed overnight, the trial court found the evidence insufficient to prove the kind of relationship that would constitute cohabitation, specifically that of a "husband and wife" type of relationship or "partners for life" relationship. Based upon these facts and the reasoning in *Honeycutt*, the trial court concluded that the defendant had not cohabited with Mr. Brown, denied the petition to terminate alimony and entered a monetary judgment against the petitioner for an alimony arrearage. This appeal followed.

## ANALYSIS

The petitioner's sole issue on appeal is whether the trial court erred in denying his petition to terminate alimony based upon the finding that the defendant had not cohabited with Mr. Brown.

A marital dissolution agreement is a contract and is subject to the rules governing the construction of contracts. *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006). The interpretation of a contract is a matter of law, and our review of the trial court's decision not to enforce the contract is, therefore, de novo on the record with no presumption of correctness as to the trial court's conclusions of law. *Id.* (citing *Honeycutt v. Honeycutt*, 152 S.W.3d 556, 561 (Tenn. Ct. App. 2003)).

We begin our analysis noting that the alimony provision at issue did not identify a "sexual relationship" or an "intimate relationship" or "spending the night" with another man as grounds for terminating alimony; the only three grounds are marriage, death, or "cohabitation with another man." Thus, the mere fact that the defendant had a sexual relationship, an intimate relationship, or spent entire evenings with Mr. Brown may not constitute a ground for terminating alimony.

We, therefore, focus our attention on the specific terms the parties used in their contract, the MDA, which terms must be taken and understood in their plain, ordinary, and

popular sense. *See Pitt v. Tyree Organization Ltd.*, 90 S.W.3d 244, 252 (Tenn. Ct. App. 2002). Although the MDA specified cohabitation with another man as a ground for termination of alimony, the term cohabitation is not defined in the MDA. Similarly, in *Honeycutt*, which the trial court referenced in its ruling, the term cohabitation was not defined. *Honeycutt*, 152 S.W.3d at 561-62. Because the term was not defined by the parties, the *Honeycutt* court set out to ascertain the plain, ordinary and popular sense of that term as *Pitt* instructs. *See Pitt*, 90 S.W.3d at 252.

"Cohabit" is defined as:

> 1: to live together as or as if as husband and wife (without formal marriage) [;] 2a: to live together or in company[;] b: to be intimately together or in company[.]

Webster's Third New International Dictionary 440 (1993). Another definition for "cohabitation" reads:

> To live together as husband and wife. The mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations.

*Black's Law Dictionary* 236 (5th ed. 1979).

*Honeycutt*, 152 S.W.3d at 563 (footnote omitted).

Based upon the foregoing definitions for "cohabit" and "cohabitation," we have concluded, as the trial court did, that the term cohabitation with another man requires more than an intimate or sexual relationship and more than spending the night on several occasions with another man. The term cohabitation with another man additionally requires something akin to the mutual assumption of duties and obligations that are customarily manifested by a married couple or life partners.

In this case, the burden of persuasion was on the petitioner to establish by a preponderance of the evidence that the defendant had been cohabitating with Mr. Brown. *See Freeman v. Freeman*, 147 S.W.3d 234, 239 (Tenn. Ct. App. 2003). The trial court made specific findings of fact in which it found that the issues in *Honeycutt* were the same as this case but the facts were not. The court noted that the ex-wife in *Honeycutt* spent 266 nights a year with her boyfriend, however, in this case the defendant typically spent two nights a week, which represents only 104 nights a year. The trial court also noted that none of the

defendant's clothes were kept at Mr. Brown's residence, but that the ex-wife in *Honeycutt* kept many of her clothes at her boyfriend's home. Finally, the trial court found that while there was proof of an intimate relationship between the defendant and Mr. Brown, the court specifically found that it was not the kind of relationship that would be categorized as a husband and wife relationship or that of life partners.[1]

The standard of review of the trial court's findings of fact in this case is de novo with the presumption that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Id.*; *see also The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). We have determined that the evidence relied on by the petitioner does not support another finding of fact with greater convincing effect than that found by the trial court. Thus, the trial court's findings of fact are deemed correct. Further, we affirm the trial court's conclusion that these facts do not prove that the defendant cohabited with Mr. Brown.

Accordingly, we affirm the denial of the petition to terminate alimony. We also affirm the judgment for the arrearage of alimony due but not paid by the petitioner and remand for a determination of whether an additional arrearage judgement is in order.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, Don Mabee, and his surety for which execution may issue.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[1]The trial court also noted that in *Honeycutt* the ex-wife had started several businesses with her boyfriend, they opened joint bank accounts, and she used her boyfriend's address as her mailing address.