# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 15, 2013 Session

## STEPHANIE LAWSON MILLER v. STEPHEN LEE MILLER

**Appeal from the Circuit Court for Knox County**
**No. 115923     Bill Swann, Judge**

**No. E2012-01414-COA-R3-CV-FILED-MAY 30, 2013**

Stephanie Lawson Miller ("Mother") appeals the Trial Court's April 26, 2012 order finding and holding her in criminal contempt for violating the parties' Permanent Parenting Plan. Mother raises issues on appeal regarding whether Stephen Lee Miller ("Father") proved beyond a reasonable doubt that Mother had violated the Permanent Parenting Plan, whether Mother could be jailed for said contempt, whether the parties' minor child has a constitutional right to exercise his religious beliefs, and whether the Trial Court erred in failing to consider the testimony of the child. We find and hold that Father did prove beyond a reasonable doubt that Mother violated the Permanent Parenting Plan, that Mother could be jailed for said contempt, that the Trial Court did not err in refusing to consider the child's testimony about his religious decision making, and that the issue of whether the child has a constitutional right is not properly before this Court. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which and THOMAS R. FRIERSON, II, J., joined. CHARLES D. SUSANO, JR., P.J., filed a dissenting opinion.

J. Terry Holland, Knoxville, Tennessee, for the appellant, Stephanie Lawson Miller.

John E. Eldridge, Knoxville, Tennessee, for the appellee, Stephen Lee Miller.

**OPINION**

**Background**

Mother and Father were divorced in July of 2010. The parties' divorce decree incorporated a Permanent Parenting Plan ("Parenting Plan") for the parties' two minor children. As pertinent to the case now before us on appeal, the Parenting Plan provided that major decisions regarding religious upbringing would be made jointly by Mother and Father, and that if the parties disagreed about the Parenting Plan "disputes must be submitted to: Mediation by a neutral party chosen by the parents or the Court." The Parenting Plan also provided that both parents are entitled to:

> The right to be given at least forty-eight (48) hours notice, whenever possible, of all extra-curricular activities, and the opportunity to participate or observe them. These include the following: school activities, athletic activities, church activities and other activities where parental participation or observation would be appropriate; ....

In December of 2011, Father filed a petition for contempt alleging that Mother had violated the Parenting Plan by excluding Father from joint decision making with regard to one of their children's religious upbringing. Specifically, Father alleged that "Mother directed the parties' minor child, Caleb, to participate in a religious studies program in anticipation of baptism," and had notified Father on Saturday, December 17, 2011 that the parties' son ("the Child"), who then was twelve years old, was going to be baptized the next day on the morning of Sunday, December 18, 2011. Father also filed a notice that he was seeking criminal contempt with regard to the alleged violation of the Parenting Plan.

A hearing on Father's petition for contempt was held in April of 2012. Father testified that Mother sent him a text message on December 17, 2011 notifying Father that the Child would be baptized the following day. Father testified that he and Mother exchanged several texts wherein, among other things, Father asked if the Child had gone through a class for baptism, and Father notified Mother that she had given Father less than twenty-four hours notice of the baptism, had never spoken to Father about the scheduled baptism, and that Father was on-call for his job on December 18, 2011. Father testified that Mother texted him that the Child had talked to the youth minister at Mother's church, filled out paperwork, and made a profession of faith. Father testified that he never had the opportunity to talk to the Child about "relevant issues of faith" and Father's beliefs on the subject.

Father testified that during his parenting time with the Child approximately a week before receiving Mother's text about the baptism, the Child had told Father "I'm

-2-

wanting to get baptised [sic]," and that Father had asked the Child to wait until they could talk about it. Father testified that the Child did not tell him that the baptism already had been scheduled.

Father had a telephone conversation with the Child on December 17, 2011 after Father had received Mother's text. Father testified that he asked the Child to wait and the Child stated: "I have to be baptised [sic] tomorrow." Father testified that the Child was "panicking, crying, upset" during this telephone conversation. Father stated that the Child was very emotional:

> So, ultimately, what happened that evening was I complied. And my comment to him was that he and I decided that we would go forward now that it's, you know, twenty-four - - twelve to twenty-four hours prior to the baptism and he's having a meltdown in the middle of the neighborhood street. So, for my - - the peace of my son's mind, I had to - - I had no choice at that point but to say, "Do what you have to do, Caleb. I will try to rearrange my schedule to be there". I felt at that point as if I had no option because my son was so disturbed and needed - - He just needed to be put at ease about it. I couldn't do anything else at that point.

After speaking with the Child, Father sent Mother a text stating that although Father was disturbed about being excluded from the decision that he and the Child had decided that the Child would be baptized as scheduled, and that Father would attempt to rearrange his schedule in order to attend. Father did attend the baptism.

Mother also testified at the hearing. Mother admitted that she and Father had not had a discussion about the religious upbringing of their minor children. Mother testified that Father did allow her to take their children to church with her on Wednesdays, which, she stated: "would run about forty-five minutes into [Father's parenting] time."

When asked about what the Child told Father with regard to the baptism, Mother testified that the Child had told Father "a week to a week … and a half ahead of time," and further stated: "The less contact I have with [Father], the better. And, so, since he knew, I knew not to dare to text him because he would do something to torture me for the next forty-eight hours." Mother agreed that she texted Father about the baptism scheduled for the next day at approximately one o'clock on that Saturday. Mother stated that "everything has to be very legal with [Father]. And because [the notification of the baptism] was twenty-two and a half hours instead of twenty-four, it wasn't perfect."

Mother acknowledged that she signed the Parenting Plan, which requires joint decision making with regard to their children's religious upbringing. Mother also agreed that the Parenting Plan provides for mediation should the parties disagree, and that the Parental Bill of Rights in the Parenting Plan provides for forty-eight hours notice to the other parent of all extra-curricular activities. Mother was asked about any notice she gave to Father regarding the baptism, and she agreed that the only notice she gave Father was to send him a text at approximately one o'clock on the day prior to the scheduled baptism. With regard to her text to Father, Mother stated: "I just did it as a courtesy."

The Trial Court refused to hear the testimony of the Child. An offer of proof was made of the Child's testimony and was preserved in the record on appeal.

After the hearing the Trial Court entered its Order of Contempt on April 26, 2012 finding and holding, *inter alia*:

> 1. The Court finds that the Mother, Stephanie Lawson Miller, ignored and failed to follow the dictates of the Permanent Parenting Plan to consult with the Father concerning the children's religious upbringing, and is therefore in contempt of this Court.
>
> 2. The Court sets punishment at ten (10) days incarceration for this single contumacious action.
>
> 3. The oral Motion of the Father to suspend the imposition of the sentence's incarceration on condition that the Mother engage meaningfully in mediation is denied.
>
> 4. The Memorandum Opinion from the hearing is incorporated by reference and shall control in the event of conflict.

After further hearing the Trial Court entered a subsequent order on April 26, 2012 finding and holding:

> This cause came on for further hearing on the 26th day of April 2012, before the Honorable Bill Swann, Judge of the Fourth Circuit Court of Knox County, upon the oral petition from Stephanie Miller to have the remainder of her sentence suspended upon certain conditions and after the parties herein through their respective attorneys indicated to the court that they were in agreement in a suspension of the remaining sentence of the mother herein under certain conditions. The Court determining that those conditions would

be appropriate for suspension of the sentence herein, subject to strict compliance with the courts [sic] further orders as herein after [sic] set forth, the Court therefore ORDERS as follows:

That the remaining sentence yet to be served by the mother in this cause for her Contemptuous actions as set forth in the order from the hearing on April 25, 2012, shall be suspended but solely upon the conditions as hereinafter set forth.

It is further ordered that the conditions of the suspension of the sentence shall be as follows:

(a.)   Payment of all court costs from the contempt proceedings themselves before released from jail; same having been done, Stephanie Miller is released ….

(b.) A prompt appearance for mediation of the matters which shall be mediated by and between the parties pursuant to the letter proposed by the father's counsel on or about February 12, 2012.

(c.) A continued strict compliance with all aspects of the permanent parenting plan and the further orders of this honorable court including attendance by both parties to additional parenting classes and completion of those additional parenting seminar training [sic] within 90 days.

The parties did mediate, but no issues were resolved.  Mother appeals.

## **Discussion**

Although not stated exactly as such, Mother raises four issues on appeal: 1) whether Father proved beyond a reasonable doubt that Mother willfully and intentionally violated the Parenting Plan; 2) whether the Trial Court erred in ordering jail time after finding Mother in criminal contempt; 3) whether the Trial Court erred in refusing to consider the Child's testimony on the issue of religious decision making; and, 4) whether the Child has a constitutional right to exercise his religious beliefs about baptism.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise.  Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of

correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether Father proved beyond a reasonable doubt that Mother willfully and intentionally violated the Parenting Plan. In *Moody v. Hutchison* we explained:

> The first issue we will address is Defendant's claim that Plaintiff failed to prove he was guilty of criminal contempt beyond a reasonable doubt. As this Court recently observed in *Barber v. Chapman*, No. M2003-00378-COA-R3-CV, 2004 Tenn. App. LEXIS 111 (Tenn. Ct. App. Feb. 23, 2004), *no appl. perm appeal filed*:
>
> > In a criminal contempt case, the guilt of the accused must be established beyond a reasonable doubt. *Black v. Blount*, 938 S.W.2d 394 at 398 (Tenn. 1996) (citing *Robinson v. Air Draulics Engineering Co.*, 214 Tenn. 30, 377 S.W.2d 908, 912 (Tenn. 1964)). However, on appeal, individuals convicted of criminal contempt lose their presumption of innocence and must overcome the presumption of guilt. "Appellate courts do not review the evidence in a light favorable to the accused and will reverse criminal contempt convictions only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt." *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993) (citing Tenn. R. App. P. 13(e)). Furthermore, appellate courts review a trial court's decision of whether to impose contempt sanctions using the more relaxed abuse of discretion standard of review. *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993).
>
> *Barber*, 2004 WL 343799, at *2, 2004 Tenn. App. LEXIS 111, at *8. *Accord*, *Freeman v. Freeman*, 147 S.W.3d 234, 242 (Tenn. Ct. App. 2003), *appl. perm. appeal denied March 22, 2004* ("Appellate Courts review a trial court's decision to impose contempt sanctions using the more relaxed 'abuse of discretion' standard of review…. The court of appeals has 'appellate jurisdiction over civil or criminal contempt arising out of a civil matter.' *See* T.C.A. § 16-4-108(b)…").

*Moody v. Hutchison*, 159 S.W.3d 15, 25-26 (Tenn. Ct. App. 2004).

Our Supreme Court has given guidance with regard to discretionary decisions stating:

The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d at 42.

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen.*

*Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010).

The Trial Court found and held that Mother "ignored and failed to follow the dictates of the Permanent Parenting Plan to consult with the Father concerning the children's religious upbringing, and is therefore in contempt of this Court." The evidence in the record on appeal shows that Father testified that Mother failed to engage in any joint decision making with regard to the decision to have the Child baptized. The record also shows that Mother does not dispute that she failed to include Father in the decision making with regard to the Child's baptism. The record reveals that Mother made no attempt whatsoever to speak to Father prior to the baptism decision being made and the baptism being scheduled. Mother admitted that her attitude is that: "The less contact I have with [Father], the better. And, so, since he knew, I knew not to dare to text him because he would do something to torture me for the next forty-eight hours." She further stated that she only texted Father as a "courtesy."

The evidence in the record on appeal shows that Mother did not notify Father about the baptism until less than twenty-four hours prior to this pre-scheduled event. The record also reveals that well before she texted Father, Mother was aware of the fact that the Child had taken steps toward being baptized including meeting with the youth minister at Mother's church, filling out paperwork, and making a profession of faith. Despite all this, Mother did not even notify Father of any of this information until the day prior to the scheduled event. In addition, Mother herself admitted that she and Father have not had any conversations with regard to their children's religious upbringing.

Mother asserts in her brief on appeal that the Trial Court "decided that the Mother, though not requested to mediate, should nonetheless have mediated." Mother is wrong. This is not at all what the Trial Court decided. The Trial Court held Mother in criminal contempt for failing to engage in joint decision making in the first place, not for failing to mediate. Mother made absolutely *no* effort to include Father in the decision making process regarding whether or not the Child would be baptized.

In her brief on appeal, Mother asserts that "[t]here was never a request for mediation." The record, however, reveals that Mother simply gave Father *no time* within which to request mediation when she notified Father less than twenty-four hours prior to the scheduled baptism. Even if Father *had* requested mediation, such a request would have been impossible to fulfill prior to the scheduled baptism.

Mother argues in her brief on appeal that there was no need to mediate the disagreement between the parties regarding baptism because Father texted Mother after speaking with the Child and stated that he and the Child had decided that the Child could be baptized. Mother has missed the point. This text from Father occurred *after* Mother had failed to engage Father in joint decision making with regard to whether or not the Child would be baptized. By the time Father sent the text message to Mother conceding that the baptism could occur as scheduled, Mother *already* had violated the Parenting Plan by failing to engage in joint decision making with regard to the decision to allow the Child to be baptized. The fact that Father made this assertion mere hours before the scheduled baptism does not change the fact that Mother completely failed to engage in joint decision making with regard to this religious decision concerning the Child. Had Mother properly notified Father ahead of time that the Child wanted to be baptized and was taking steps toward that end and allowed Father time to speak with the Child *before* the baptism decision was made and the baptism already scheduled, then mediation could have been scheduled if the parties had disagreed. Notifying Father less than twenty-four hours prior to the already decided upon and scheduled event was not only in violation of the Parenting Bill of Rights contained in the Parenting Plan, but also a violation of the joint decision making required by the Parenting Plan.

Mother also argues that the fact that Father and his mother attended the baptism shows Father's agreement with the decision to have the Child baptized. We disagree. The fact that Father attended the baptism in no way shows that Father agreed with the decision that was made *without him* to have the Child baptized. Rather, it shows that Father apparently put the well-being of the Child before his own feelings about the disagreement between Father and Mother and attended the baptism for the Child's sake.

Mother also argues that the Child notified Father "a week to a week … and a half ahead of time," of the Child's desire to be baptized. There are several problems with this argument. First, it is not the Child's responsibility under the Parenting Plan to notify and include Father, it is Mother's responsibility. Second, even if the Child had notified Father about the scheduled baptism, Mother still was in violation of the Parenting Plan for failing to include Father in the decision making process with regard to whether or not the Child would be baptized. Third, the Trial Court did not find Mother in criminal contempt for

failing to notify Father of the scheduled baptism[1]. Rather, the Trial Court found Mother in criminal contempt for failing to engage in the joint decision making required under the Parenting Plan.

Mother comes to this Court without the presumption of innocence, and we do not review the evidence in a light favorable to her. This Court's function on this issue is to determine whether there was sufficient evidence to support the Trial Court's findings of criminal contempt beyond a reasonable doubt. Based upon our review of the entire record before us, we conclude that there was sufficient evidence to support the Trial Court's finding of criminal contempt beyond a reasonable doubt.

We next consider whether the Trial Court erred in ordering jail time after finding Mother in criminal contempt. As our Supreme Court has explained:

> criminal contempts are "intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society." *Black*, 938 S.W.2d at 398. Punishment for criminal contempt is both punitive and unconditional in nature and serves to adjudicate "an issue between the public and the accused." *Id*.

*Doe v. Bd. of Professional Responsibility*, 104 S.W.3d 465, 474 (Tenn. 2003).

Mother argues in her brief on appeal that subsection D of section V of the Parenting Plan "does not allow for the provision of jail time." Mother has missed the point. In pertinent part, the Parenting Plan provides:

## V. DISAGREEMENTS OR MODIFICATION OF PLAN

Should the parents disagree about this Parenting Plan or wish to modify it, they must make a good faith effort to resolve the issue by the process selected below before returning to Court. *Except for financial support issues including child support, health and dental insurance, uncovered medical and dental expenses, and life insurance,* disputes must be submitted to:

Mediation by a neutral party chosen by the parents or the Court.

---

[1]The evidence in the record on appeal shows that the Trial Court also could have found Mother in contempt for failing to give Father forty-eight hours notice of the extra-curricular activity of the baptism as required under the Parenting Plan, but did not do so.

* * *

In the dispute resolution process:

> A. Preference shall be given to carrying out this Parenting Plan.
> B. The parents shall use the process to resolve disputes relating to implementation of the Plan.
> C. A written record shall be prepared of any agreement reached, and it shall be provided to each parent.
> D. If the Court finds that a parent willfully failed to appear without good reason, the Court, upon motion, may award attorney fees and financial sanctions to the prevailing party.

(emphasis in original). Thus, the subsection to which Mother refers deals *only* with what may happen if either party fails to appear for mediation. It *does not* address what may happen if either party is in contempt of court for violating the Parenting Plan. Mother's argument is without merit.

Mother also argues: "If one can not be jailed [under the Parenting Plan] for failing to engage in mediation, how can one be jailed under this parenting plan authorized and required by the State for failing to even seek a mediation where the parties agreed in writing to an act?" There are several problems with Mother's assertion. First, nothing in the Parenting Plan prohibits a court from sentencing either party to jail time for criminal contempt. Instead, subsection D of section V provides that a court may, upon motion, award attorney fees and financial sanctions for a willful failure to appear for mediation. There is a significant difference between those two situations. Second, the evidence in the record on appeal reveals that the parties did not agree in writing to any act. The fact that Father finally sent a text to Mother stating that he and the Child had agreed that the Child would be baptized as scheduled does not show that Father and Mother agreed to anything in writing. Third, Mother was not found in criminal contempt and sentenced to jail time for failing to seek mediation. As discussed above, Mother was found in criminal contempt for failing to engage in the joint decision making required under the Parenting Plan.

After finding Mother in criminal contempt the Trial Court sentenced Mother to ten days in jail. After further hearing, the Trial Court entered, on the same day as the order finding Mother in criminal contempt, a subsequent order suspending Mother's sentence upon certain conditions. We find no error or any abuse of discretion in the Trial Court's ordering jail time, or in the Trial Court's order suspending the sentence subject to certain conditions. The Trial Court's finding of guilt beyond a reasonable doubt will, hopefully, "preserve the power and vindicate the dignity and authority of the law, and the court as an organ of

-11-

society." *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996). We affirm the judgment of the Trial Court on this issue.

Next, we consider whether the Trial Court erred in refusing to consider the Child's testimony on the issue of religious decision making. In her brief on appeal Mother asserts that "the Court had a duty in a criminal matter to allow [Mother] to put on any relevant proof. Certainly the wants, needs and desires of [the Child] were of relevance to the case." Mother is mistaken.

First and foremost, the Child's testimony on the issue of religious decision making is immaterial to the issue of whether Mother was in criminal contempt for violating the Parenting Plan. Furthermore, the Child's testimony about what he told Father, which Mother alleges "disputed his Father's testimony and half truths," also is immaterial to the issue now before us. Mother was found in criminal contempt for failing to engage in joint decision making with Father with regard to the decision to have the Child baptized. Nothing the Child could have said would have been relevant to the issue of whether Mother engaged with Father in joint decision making. As mentioned above, it was not the Child's responsibility to notify Father of anything, nor was it the Child's responsibility to engage in joint decision making with Father. The Child's testimony simply was not relevant to the issue before the Trial Court.

Mother asserts in her brief on appeal that the issue "was one that deserved to have proper explanation in the proper context of a young man's decision concerning baptism." As discussed ad nauseam within this Opinion, however, the Child's decision concerning baptism *is not the issue*. The only issue in this case is whether Mother was in criminal contempt for violating the Parenting Plan by failing to engage in joint decision making with Father about the subject of the Child's baptism. We find no error in the Trial Court's refusal to hear the Child's testimony, particularly the Child's testimony about religious decision making.

Finally, we turn to the issue of whether the Child has a constitutional right to exercise his religious beliefs about baptism. We note that this case is not about the Child's rights. Rather, as we have already stated, this case is about only whether Mother was in criminal contempt for violating the Parenting Plan. The Child's rights, wants, desires, and needs are immaterial to the issue of whether Mother was in criminal contempt. The issue of whether the Child has a constitutional right to exercise his religious beliefs about baptism was not properly before the Trial Court and is not properly before this Court. Mother simply seeks to obfuscate the real issue by attempting to raise an issue about the Child's rights. We will not consider this issue.

As is often the case with divorced parties, Mother and Father have difficulties communicating with one another. These difficulties, however, do not absolve them of their obligations under the Parenting Plan and their obligation to work together in the upbringing of their minor children. Mother's actions put the Child 'in the middle' of her disagreement with Father by insisting that the Child had a right to make the decision about baptism and that the Child notified Father. *Both parties* are reminded that putting their child in the middle of their disagreements is not acting in the best interest of their child. We note that the Trial Court ordered both parties to attend further parenting training. We sincerely hope that this further training will assist *both parties* in the future to put the welfare of their children before their own petty differences.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellant, Stephanie Lawson Miller, and her surety.

_____
D. MICHAEL SWINEY, JUDGE