IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 18, 2013 Session

## DANIEL ANTHONY NORFLEET V. AUDRA ANN NORFLEET

**Appeal from the Chancery Court for Montgomery County**
**No. MCCHCVDI03515      Ross H. Hicks, Judge**

**No. M2013-00652-COA-R3-CV - Filed April 9, 2014**

This is an appeal from a finding of contempt. When the parents of a six year old girl divorced, they agreed to name the father as the child's primary residential parent. The mother subsequently acted in a hostile and uncooperative way towards the father, and her parenting time was reduced. Shortly thereafter, the father filed a petition for contempt, alleging that the mother had failed to pay court-ordered child support for four consecutive months. Following a hearing, the trial court held the mother in contempt. She argues on appeal that the trial court erred by trying criminal and civil contempt in the same proceeding. She also argues that the trial court's order was invalid, because it did not specifically state that her actions were "willful." We affirm the trial court.

**Tenn R. App. P. 3 Appeal As of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Dan Richard Alexander, Nashville, Tennessee, for the appellant, Audra Ann Norfleet.

Melissa A. King, Peter M. Napolitano, Clarksville, Tennessee, for the appellee, Daniel Anthony Norfleet.

## OPINION

### I. A PARENTING PLAN AND AN ACTION FOR CONTEMPT

Daniel Norfleet ("Father") and Audra Norfleet ("Mother") were granted an uncontested divorce in 2007. Under the terms of their Marital Dissolution Agreement, Father was named in the Parenting Plan as the Primary Residential Parent of the parties' daughter Amber, born in 2000. The Residential Parenting Schedule provided that Father would spend

195 days with the child each year, and Mother would spend 170 days. Mother was ordered to pay Father $185 a month, in accordance with the income shares child support guidelines.

Father subsequently petitioned the trial court for a modification of the Parenting Plan and for a restraining order. He alleged that Mother had violated the conditions and the spirit of the Parenting Plan in numerous ways.[1] On April 18, 2011, the trial court granted Father's petition, entered the restraining order and modified the Parenting Plan. The new Residential Schedule gave Father 285 days with the child, and reduced Mother's parenting time to 80 days. Mother's child support obligation was also reduced, to $174 a month.

On June 21, 2011, Father filed a pleading captioned " Petition for Criminal Contempt and Further Modification of Parenting Plan and Application for New Restraining Order." He also filed a Notice of Rights and served it on Mother in conformity with the due process requirements of Tenn. R. Crim. P. 42(b) applicable to a petition for criminal contempt.[2] Father's petition recited allegations similar to those made earlier, including Mother's continuing failure to pay her child support obligations, and it stated that Mother had been convicted of three criminal offenses on April 28, 2011.

According to the petition, Mother was convicted of one count of assault against Father's girlfriend during an exchange of the child, and one count of assault and one count of obstruction of service of process stemming from Mother's assault upon a process server who was attempting to serve the court's restraining order on her. Mother was sentenced for her offenses to two concurrent six-month sentences in the Montgomery County jail.

Father filed an amended petition on November 11, 2011. He alleged that since the filing of his original petition, Mother had "committed further acts of misconduct constituting both civil and/or criminal contempt . . ." These included the filing of additional false charges against Father, an incident in which DCS cited Mother for beating the child with a hairbrush while the child was in Mother's custody, and "entrusting" the child with her boyfriend, a convicted criminal, when she entered jail for the first time, rather than returning the child to Father's care. Father requested that Mother be found in criminal contempt, "or in the

---

[1]Father's first petition to modify the parenting plan and for a restraining order is not found in the record. Our account of the allegations found in that petition is based on a later petition filed by Father, which included a long list of Mother's alleged violations of the parenting plan, "[p]rior to, during and after the prior petition was filed against her . . ."

[2]Rule 42(b) requires that, except in the case of a contempt committed in the presence of the judge, a criminal contempt must be prosecuted on notice, and such notice shall state the time and place of the hearing, allow the defendant a reasonable time to prepare a defense, and state the essential facts constituting the criminal contempt charged and describe it as such.

alternative civil contempt and punish her accordingly."

## II. The Final Contempt Hearing

The trial court conducted the final hearing on December 28, 2012. Mother was represented by appointed counsel. The court announced early in the proceedings that "there are actually three matters before the Court. Mr. Norfleet's Contempt Petition against Ms. Norfleet, Mr. Norfleet's Petition to Modify the Parenting Plan, and Ms. Norfleet's Order of Protection against Mr. Norfleet." Father and Mother both testified at length and Mother's mother testified briefly. The trial judge also heard from the parties' child in chambers in the presence of the attorneys for both parties. The parties stipulated to Mother's three convictions, as well as to Mother's arrest and indictment for filing a false police report against Father.[3] The court also heard testimony about a *pro se* order of protection that Mother had taken out against Father after he allegedly threatened to kill her.

Father testified in detail about numerous incidents where police officers came to his door as the result of Mother's allegations of abuse by Father and her request for a welfare check. He stated that he let the officers in each time and let them speak to the child, that the officers were satisfied that there was no problem, and that DCS concluded that all the allegations were unfounded. He also testified that the repeated visits by the officers left the child frightened every time the doorbell rang or there was a knock on the door.

Father testified that Mother sold a seven acre piece of real property in August of 2012 for about $27,000, and that she subsequently paid her child support arrearage up to that date. However, she did not pay any support for September, October, November or December 2012.

When Mother took the stand, she testified that she had worked at an emergency room technician until August of 2010, but that she was currently unemployed and was looking for work. She also stated that she had five ruptured discs in her spine and two compressed discs in her neck, that she had applied for social security disability and that she had paid whatever child support she could.

Mother was questioned at length about the property sale and the disposition of the proceeds. She testified that she couldn't recall how much she was paid for the land, or how much she received in the end. She stated that after paying the auctioneer, her pro rata share

---

[3]Mother's trial on that charge was scheduled for January 13, 2013.

of taxes and the child support arrearage, there was almost nothing left.[4]  When challenged to produce some documentation about the sale, she was unable to do so.  She stated that she couldn't produce the closing statement and that she didn't know if she had ever gotten it, "because everything was going to be mailed."

Mother also testified that she was living in a house that she bought using the assets she had acquired as a result of the divorce.  She couldn't remember how much she paid for the house or how much for the down payment, but she knew the amount of her mortgage payment, "around $1012.20 a month."  She testified that she paid her living expenses with the help of a female friend, but refused to reveal her friend's name because the friend is a very private person and "I would not like my friend harassed by my ex-husband."

Mother denied that she had hit the child with a hairbrush, and she stated that Father had told the child to lie about that.  She testified that she took out an order of protection against Father because during a phone call about an incident at daycare, Father threatened to kill her. She stated that "I believed him because he's hired someone to assault me in the past."  She frequently responded to yes and no questions by launching instead into accusations against Father, and when asked if she had proof about those accusations, she answered that she did.  But the proof almost always involved telling the court to ask someone about it who was not in the courtroom, or to look at information in a document that she couldn't produce.  In short, much of Mother's testimony was evasive and argumentative.

At the conclusion of testimony, the trial court ruled from the bench.  The court declared that Mother was not credible, including her testimony in regard to the sale of her property.  It declared that it would accept her testimony that she was not currently employed, and that her health issues made it difficult for her to find employment, but that it believed she was employable.  For the purposes of this appeal, its most important ruling was that "Ms. Norfleet is in contempt of court with respect to her failure to pay child support due in September, October, November and December 2012.  The court finds that she has had and does have the ability to have paid, and it's not much, it's 160-something dollars a month that she's supposed to be paying in child support under the current order."

The court accordingly found her guilty of four counts of contempt and sentenced her to ten days in the Montgomery County Jail on each count. The sentence was suspended to two days on each count, to be served over four weekends.  The court also dismissed the order of protection, noting Mother's general lack of credibility and the fact that she had taken the

_____

[4]Mother testified that the property was unencumbered by any mortgage.  The record showed that a lien had been placed on the property for $6324 in unpaid child support, and that amount was paid into court to satisfy the lien.

order out three months after Father's alleged threat to kill her. The court also further reduced Mother's parenting time. The court's ruling was memorialized in an order entered on January 29, 2013. This appeal followed.

### III. ANALYSIS

#### A. The Standard of Review

The only issue Mother raises on appeal is the matter of contempt. She argues that the court erred in not specifying whether it found her in civil contempt or criminal contempt, by trying the contempt in conjunction with the petition for modification rather than in a separate proceeding, and that the basis for the court's finding of contempt was not a permissible one. Our review of the trial court's conclusions of law is *de novo*, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

With regard to the trial court's findings of fact, our review on appeal of is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn. 1984). When we review factual findings that are based on credibility we must give considerable deference to the trial courts, because they are in a far better position to observe the demeanor of witnesses than are the appeals courts. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Fell v. Rambo*, 36 S.W.3d 837, 846 (Tenn. Ct. App. 2000).

#### B. Civil and Criminal Contempt

The power of the courts to punish for contempt has long been recognized as essential to the proper administration of justice. *Konvalinka v. Chattanooga-Hamilton County Hospital Authority*, 249 S.W.3d 346, 354 (Tenn. 2008) (citing *Winfree v. State,* 135 S.W.2d 454, 455 (Tenn. 1940); *State v. Galloway*, 45 Tenn. (5 Cold.) 326, 331 (1868)). Because of the potential for abuse of that power, our legislature has enacted statutes to define and limit the contempt power. *Konvalinka,* 249 S.W.3d at 354; *Black v. Blount*, 938 S.W.2d 394, 397 (Tenn. 1996).

Conduct punishable as contempt includes, "[t]he willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." Tenn. Code Ann. § 29-9-102(3). An act of contempt may be punished by a fine of up to $50, "and imprisonment not exceeding ten (10) days." Tenn. Code Ann. § 29-9-103(b). The trial court in this case held

Mother in contempt for failing to comply with its order to pay child support.

Contempts are normally classified as either civil or criminal. Civil contempts are brought to enforce private rights when a party refuses or fails to comply with a court order. *Black v. Blount*, 938 S.W.3d at 398. Imprisonment for civil contempt is coercive or remedial in character. Its primary purpose is to compel the contemnor to comply with the court's order. Compliance will result in immediate release from incarceration. Therefore the contemnor is often said to "carry the keys to his prison in his own pocket." *Black v. Blount*, 938 S.W.3d at 398 (citing *State ex rel Anderson v. Daugherty,* 191 S.W. 974 (Tenn. 1917)); *Crabtree v. Crabtree*, 716 S.W.2d 923, 925 (Tenn. Ct. App. 1986).

In contrast, sanctions for criminal contempt are punitive in character. Their primary purpose is to preserve and vindicate the authority of the law and of the courts that exercise that authority. *Doe v. Board of Professional Responsibility*, 104 S.W.3d 465, 474 (Tenn. 2003); *Black v. Blount*, 938 S.W.3d at 397. Persons imprisoned for criminal contempt cannot be freed by eventual compliance with the court's orders. *Robinson v. Fulliton*, 140 S.W.3d 304, 310 (Tenn. Ct. App. 2003).

Because of their punitive nature, our courts have deemed criminal contempt proceedings to be "quasi-criminal" in nature. *Shiflet v. State*, 400 S.W.2d 542, 544 (Tenn. 1966) (citing *State v. Daugherty*, 191 S.W. at 974). As such, many of the due process protections that apply to other criminal proceedings, such as adequate notice, a presumption of innocence and the right to an attorney apply to proceedings for criminal contempt as well. However, contempts have also been described as *sui generis.* Unlike all other offenses that are tried in our courts, they are incidental to the cases out of which they arise. *Doe v. Board. of Professional Responsibility*, 104 S.W.3d at 474. "Prosecutions of criminal contempt 'are not intended to punish conduct proscribed as harmful by the general criminal laws. Rather, they are designed to serve the limited purpose of vindicating the authority of the court.'" *Lovvorn v. Lovvorn,* M2007-01834-COA-R3-CV, 2008 WL 2343645 at *2 (Tenn. Ct. App. June 4, 2008) (no Tenn. R. App. P. 11 application filed) (quoting *Black v. Blount*, 938 S.W.2d at 402)).

Mother argues that the conduct of the proceeding below was seriously flawed because Father alleged both civil and criminal contempt in the same petition, because the question of contempt was tried in conjunction with Father's petition for modification and Mother's order of protection rather than in a separate proceeding, and because the trial court's order did not specify whether it held Mother in civil contempt or criminal contempt. She accordingly urges this court to reverse the finding of contempt.

We note, however, that Mother did not object at trial to the trial court's failure to

specify whether criminal and civil contempt was at issue. Nor did she ask that the proof be bifurcated or that the question of contempt be tried in a proceeding separate from the modification of the parenting plan. Under the Tennessee Rules of Appellate Procedure, this court is not required to grant relief to a party who is responsible for an error at trial, "or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36.

But even if she had timely objected to the trial court's conduct of the hearing, we see nothing in that hearing that rises to the level of reversible error. Mother relies on language in an unpublished opinion in which this court reversed and vacated a judgment for criminal contempt. Explaining our decision, we observed among other things that "[c]ivil and criminal contempt proceedings should not be tried simultaneously because of the significant differences in the respective burdens of proof and procedural rights accorded to the person accused of contempt." *Cooner v. Cooner*, No. 01–A–01–9701–CV–00021, 1997 WL 625277 at *15 (Tenn. Ct. App. Oct. 10, 1997).

The *Cooner* court found, however, that an even more significant deficiency in the proceedings below was the failure to give the alleged contemnor adequate notice of the charges against her. This courts has held many times that a finding of criminal contempt cannot be sustained unless the contemnor has received adequate notice in accordance with the mandates of Tenn. R. Crim. P. 42(b). *Long v. McAllister-Long*, 221 S.W.3d 1, 13 (Tenn. Ct. App. 2006); *Storey v. Storey*, 835 S.W.2d 593, 600 (Tenn. Ct. App. 1992); *Sprague v. Sprague*, E2012-01133-COA-R3-CV, 2013 WL 3148278 (Tenn. Ct. App. June 18, 2013) (no Tenn. R. App. P. 11 application filed); *Jones v. Jones*, 01A01-9607-CV-00346, 1997 WL 80029 (Tenn. Ct. App. Feb. 26, 1997).

In *Freeman v. Freeman*, 147 S.W.3d 234 (Tenn. Ct. App. 2003), the trial court found the husband in civil contempt for failing to pay alimony in accordance with its orders. The husband cited *Cooner v. Cooner* on appeal and argued that the proceedings below were tainted because the wife's petition alleged both civil and criminal contempt. We discussed *Cooner v. Cooner* at length in our opinion, and concluded that "[t]he mere allegation in Wife's petition seeking both civil and criminal contempt does not prejudice the judicial process and allows the petitioner to elect to proceed on one or the other, providing, of course, that the proper notice is afforded to the respondent." *Freeman v. Freeman*, 147 S.W.3d at 244.

The caption of Father's petition included the words "Criminal Contempt," and in its body he specifically asked the trial court to hold Mother in criminal contempt, because she had not paid her court-ordered child support obligations. He also filed a "Notice of Rights," to inform Mother of the constitutional rights that she was entitled to exercise as a defendant

-7-

in an action for criminal contempt. Therefore, unlike the defendant in *Cooner*, Mother received all the notice to which she was legally and constitutionally entitled.[5]

As for trying the contempt in the same proceeding as the modification petition and the order of protection, we acknowledge that such a practice involves the same difficulties as were mentioned by the *Cooner* court in regard to trying criminal and civil contempt in the same proceeding: that is, the differences in the respective burdens of proof and in the procedural rights of the parties. However, the same conduct that impels a party to seek enforcement or modification of a prior order of the court, such as a failure to pay child support or a failure to comply with a parenting order, can also support an action for contempt.

Thus, even though it may be better in some ways to try contempt separately from other claims, it is not unusual for a contempt charge to be tried together with the case from which it arose, for reasons of judicial economy and for the convenience of the parties. In such cases, it is important for the trial court to keep the distinctions between the various claims in mind.

In the present case, the court stated at the outset of the hearing that it would be trying three different claims, and after hearing all the evidence it once again identified the three matters at issue and recited the evidence it relied on to reach its decision on each of them. The trial court clearly recognized the differences between the pleadings before it and the proof required for each. We find no reversible error in the trial court's reasoning or in its conduct of the proceedings below.

## C. The Basis of the Trial Court's Ruling

Mother argues that the trial court held her in contempt on the basis of conduct which was insufficient to sustain such a finding. To support that argument, she selectively quotes the following language from the trial court's order:

> The Court's finding of contempt is based on several factors, primarily

---

[5]We note that although the practice of combining claims for civil and criminal contempt in the same proceeding has sometimes been criticized, it is not at all uncommon. *See*, for example, *Overnite Transportation Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507, 509 (Tenn. 2005); *Jarrell v. Jarrell*, W2011-00578-COA-R3-CV, 2012 WL 1066398 (Tenn. Ct. App. Mar. 28, 2012); *Weissfeld v. Weissfeld*, E2004-00134-COA-R3-CV, 2004 WL 2070979 (Tenn. Ct. App. Sept. 16, 2004). In those cases where a finding of criminal contempt has been reversed or vacated, some other deficiency in the proceedings, such as lack of adequate notice, is usually the reason for the decision. *See Storey v. Storey*, 835 S.W.2d 593, 600 (Tenn. Ct. App. 1992).

the Respondent's total lack of credibility with this Court previously and in her testimony in this hearing today.

Respondent repeatedly trifled with the Court and Petitioner's counsel when questioned about the proceeds of the sale of her land in August, 2012. She denied receiving any proceeds or a closing statement and refused to disclose how the proceeds were disbursed.

The Court finds that not only was Respondent, Audra Norfleet's credibility questionable, but rather that she outright lied to the court under oath when questioned specifically by this Court.

Mother points out that lack of credibility is not a ground for contempt, and that while lying to the court may constitute grounds for a perjury action, it is likewise not a ground for contempt. *See Moody v. Hutchinson,* 159 S.W.3d 15 (Tenn. Ct. App. 2004).

But Mother is misconstruing the trial court's meaning, because immediately before the above-quoted language in the same order, the trial court addressed the contempt claim as follows,

As to No. 1: Petition for Criminal Contempt, the Court finds the Respondent guilty of four (4) counts of Contempt for non-payment of child support for September, October, November and December, 2012. As before, the Respondent has had and does have the ability to pay her child support and has not done so. Further, the Court finds that she is employable and has the ability to pay.

The very same finding was then repeated immediately after the language about credibility and lying. That language was therefore merely an explanation of why the court did not credit Mother's testimony about her lack of financial resources. It was undisputed that she did not pay child support for four consecutive months. Thus, contrary to Mother's argument, it is clear that the trial court based its finding of contempt on her failure to pay child support when she had the ability to pay, not on her failure to be honest with the court.

### D. The Question of Willfulness

Tenn. Code Ann. § 29-9-102 makes "willful disobedience" to the court's orders a ground for contempt, so willfulness is one of the essential elements of contempt. Mother contends that the trial court's final order is deficient because it did not specifically say that her failure to pay child support was "willful," nor was the word "willful" or "willfulness" to

be found anywhere in that order.

A failure to pay child support is not willful if the obligor does not have the ability to pay. *Cottingham v. Cottingham*, 193 S.W.3d 531, 539 (Tenn. 2006); *Martin v. Moats,* M2004-01921-COA-R3-CV, 2006 WL 2527641 (Tenn. Ct. App. Aug. 24, 2006) (no Tenn. R. App. P. 11 application filed). Conversely, the obligor is acting willfully if she has ability to pay, but does not do so. In the present case, the evidence showed that Mother sold a piece of land for about $27,000 in August of 2012. While she paid past-due support from the proceeds of the sale, that amount was only $6,324.00. The trial court explicitly found that Mother had the ability to pay the modest amount of prospective support as it came due from the proceeds of that sale. Mother denied that she received any money from the sale of the property, but the court found that her testimony was not credible.

Unlike this Court, the trial court observed Mother's manner and demeanor and thus was in the best position to evaluate her testimony. *See, Moody v. Hutchison*, 159 S.W.3d 15, 26 (Tenn. Ct. App. 2004). A trial court's determinations regarding credibility are accorded great deference by this Court. *Ibid*. (citing *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001)).

In a criminal contempt case, the guilt of the accused must be established beyond a reasonable doubt. *Cottingham v. Cottingham*, 193 S.W.3d at 538; *Black v. Blount*, 938 S.W.2d 394 at 398 (Tenn.1996); *Moody v. Hutchison*, 159 S.W.3d at 25. "However, on appeal, individuals convicted of criminal contempt lose their presumption of innocence and must overcome the presumption of guilt. Appellate courts do not review the evidence in a light favorable to the accused and will reverse criminal contempt convictions only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt." *Moody v. Hutchison,* 159 S.W.3d at 25 (quoting *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993)).

We have examined the appellate record closely, and we find sufficient evidence beyond a reasonable doubt, to support the trial court's conclusion that Mother had the ability to pay, and therefore its implicit corollary that she willfully disobeyed the court's order to pay child support. We accordingly affirm its order holding her in contempt of court.

## IV.

The judgment of the trial court is affirmed. We remand this case to the Chancery Court of Rutherford County for any further proceedings necessary. Tax the costs on appeal to the appellant, Audra Norfleet.

_____
PATRICIA J. COTTRELL, JUDGE