# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs July 1, 2016

## TADD TIMOTHY BROWN v. DAWN VERONICA BROWN

**Appeal from the Chancery Court for Williamson County**
**No. 39251     Deanna B. Johnson, Chancellor**

---

**No. M2015-01318-COA-R3-CV – Filed August 26, 2016**

---

This appeal arises from a finding of criminal contempt in a child support matter. Dawn Veronica Brown ("Mother") filed a petition for contempt against her ex-husband Tadd Timothy Brown ("Father") in the Chancery Court for Williamson County ("the Trial Court"). In her petition, Mother alleged numerous violations by Father of the parenting plan and marital dissolution agreement, including that Father had failed to pay child support toward their minor child ("the Child"). After a trial, the Trial Court found Father guilty on twelve counts of criminal contempt. Father appeals. We find and hold that the evidence is sufficient to sustain Father's convictions for failure to pay child support. However, we reverse the count found against Father for his refusal to turn the Child over to maternal relatives rather than Mother over one specific summer week, and modify his sentence accordingly. Otherwise, we affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed, in Part, and, Reversed, in Part**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which W. NEAL MCBRAYER and BRANDON O. GIBSON, JJ., joined.

Judy A. Oxford, Franklin, Tennessee, for the appellant, Tadd Timothy Brown.

Angela R. Hoover, Franklin, Tennessee, for the appellee, Dawn Veronica Brown.

# OPINION

## Background

Mother and Father were divorced in March 2011. The parties' final decree of divorce incorporated a parenting plan that, among other things, required Father to pay child support to Mother for the Child, born 2002, in the amount of $357.00 per month. In addition to the $357.00 per month child support, the parenting plan and final child support order provided that Mother was to be permitted to retain the Child's Social Security Benefits of $633.00 per month related to Father's Social Security disability, and that these Social Security funds were to be used solely for the benefit of the Child. Father was disabled as a result of a work-related injury from 1988. Mother was named primary residential parent of the Child. Mother paid $350.00 per month to Father in transitional alimony. In March 2012, Father filed a petition to modify the parenting plan to adjust his child support obligation. This petition never was acted upon.

In November 2013, Mother filed a petition for contempt against Father. Mother alleged numerous violations of the parenting plan. Relevant to the issues on appeal, Mother alleged that Father willfully failed to pay his child support and that he had failed to give Mother her visiting time in the summer of 2013. This matter was not tried until February 2015.

Father testified that he believed, despite what the parenting plan said, that the $357.00 he owed in child support per month actually should be subsumed into the $633.00 that went to the Child from his Social Security disability benefits. Father stated that he paid the $357.00 at first because he believed Mother needed it. Father remarried and adopted his current wife's two children, which caused the Social Security allocation to be reduced by two-thirds to the Child to $222.00 per month. According to Father, it was his understanding that so long as the total amount he paid Mother for child support, including the Social Security payment, equaled $357.00, he was adhering to his obligations. With respect to the summer of 2013 incident, Father testified that he originally had no issue with the Child going with her maternal relatives for the week the Child was scheduled to be with Mother. Because Father became concerned that the maternal relatives would not return the Child to him for his final two weeks of visitation, he refused to allow the visit.

Mother testified that Father had failed to pay the full $357.00 from November 2011 through April 2013. Mother stated that Father's refusing to pay the full amount coincided with Mother's ceasing to pay him alimony because of Father's remarriage. Mother also testified that Father had a practice of working side jobs which

significantly augmented his reported income. However, Father denied this categorically, and there was no additional evidence presented that he worked side jobs.

In March 2015, the Trial Court entered an order finding Father guilty of criminal contempt. The Trial Court found that Father had failed to pay the full required amount of child support for eleven different months for a total of eleven counts. The Trial Court also found Father guilty on one count of criminal contempt for refusing to turn the Child over to maternal relatives in the summer of 2013. The Trial Court sentenced Father to 120 days in jail to be served consecutively, all but five days suspended. The Trial Court stated, in part:

At the Hearing on the Contempt Petition, Father claimed he stopped paying the Child Support because he believed the Social Security disability benefits Mother was receiving on behalf of the child should take the place of the Child Support. Father claimed he was given this advice by his attorney. The Court does note that on March 14, 2012, Father filed a Petition to Modify the Parenting Plan arguing that the Child Support Worksheet is incorrect because it improperly accounts for the Social Security disability benefits. However, that Petition was never heard. Thus, Father was still under an obligation to pay $357.00 per month as agreed to in the Parenting Plan and Marital Dissolution Agreement and as Ordered in the Final Divorce Decree.

Moreover, the Court finds that Father's claim that he was instructed by his lawyer to make only partial payments is not credible. Father failed to subpoena his lawyer to testify regarding such claims. Therefore, Father's story could not be challenged. Also, Mother's attorney has represented her throughout the entirety of this case. She informed the Court that the Petition to Modify the Parenting Plan Father had filed was dismissed by Father's previous attorney. In addition, the timing of Father's sudden ceasing of Child Support payments defeats his credibility. He had been paying $357.00 per month for nearly a year. Then, when Mother stopped paying Alimony (which was $350.00 per month), Father almost immediately stopped paying Child Support and a month later he filed a Petition to Modify the Parenting Plan. Finally, Father's general demeanor while testifying leads the Court to find that Father is not credible on this issue.

On March 22, 2013, Father emailed Mother and advised her that their daughter's portion of the Social Security Disability benefits would be decreased to $222.00 per month. This reduction occurred because Father

-3-

adopted his new wife's two children. At the Hearing, Father admitted that he knew that adopting two additional children would decrease the amount of Social Security benefits [the Child] would receive. Father gave no viable explanation for his decision to adopt two additional children despite it reducing [the Child's] benefits other than to say "it was the right thing to do." In that same email, Father informed Mother that, because of this benefits decrease to [the Child], he would begin paying $135.00 per month, which would be the difference between $357.00 and $222.00. So, in April of 2013, Father began making partial payments of $135.00 per month in Child Support.

Ultimately, based on the parties' testimony, the Court finds that Father willfully did not pay any child support for the months of November of 2012, December of 2012, January of 2013, February of 2013, and March of 2013. In addition, the Court finds that Father willfully paid only $135.00 per month for the months of April through September of 2013. Therefore, Father willfully failed to pay the full amount of Child Support Ordered, $357.00 per month, on eleven (11) different occasions. The Court finds that Father had the ability to pay all of this Child Support as he was continuing to receive his Social Security benefits from the Federal Government.

\*\*\*

In the instant case, Father's excuse that his lawyer told him he did not have to pay $357.00 per month is not a defense to ignoring the Court's Order to pay it. First of all, the Court does not find Father's testimony that his lawyer told him not to pay $357.00 per month in Child Support to be credible. Father's demeanor and testimony at trial was not credible. In addition, the circumstances under which Father failed to pay the Child Support leads the Court to disbelieve Father's "my lawyer told me to" defense. Father paid $357.00 per month for nearly a year. During this entire time, Mother was receiving the $633.00 per month for Social Security benefits for [the Child]. Then, in November of 2011, Mother stopped paying Alimony to Father because he re-married. Father almost immediately stopped paying Child Support. Then, in March of 2012, Father filed a Petition to Modify Child Support. However, that Petition was never heard by the Court. According to Mother's attorney, that Petition was withdrawn in open Court. As Father failed to bring his former lawyer to Court to testify about the matter or to submit an Affidavit about it, the Court has before it only the statements of Mother's attorney.

-4-

It is also noteworthy that, during the Mediation, Mother raised allegations that Father was making money "on the side" in addition to the Social Security Disability benefits he received from the federal Government. During the bargaining process and the give-and-take of the Mediation, Mother compromised those allegations of Father earning money "on the side" and agreed to a lesser income for Father in exchange for receiving $357.00 per month in Child Support and the $633.00 per month for the child's social security disability benefits.

As discussed above, on March 22, 2013, Father emailed Mother and advised her that their daughter's portion of the Social Security Disability benefits would be decreased to $222.00 per month. This reduction occurred because Father adopted his new wife's two children. At the Hearing, Father admitted that he knew that adopting two additional children would decrease the amount of social security benefits [the Child] would receive. Father gave no viable explanation for his decision to adopt two additional children despite it reducing [the Child's] benefits other than to say "it was the right thing to do." In that same email, Father informed Mother that, because of this benefits decrease to [the Child], he would begin paying $135.00 per month, which would be the difference between $357.00 and $222.00. So, in April of 2013, Father began making partial payments of $135.00 per month in Child Support.

Ultimately, based on the parties' testimony, the Court finds that Father did not pay any child support for the months of November of 2012, December of 2012, January of 2013, February of 2013, and March of 2013. In addition, the Court finds that Father paid only $135.00 per month for the months of April through September of 2013. Therefore, Father failed to pay the full amount of Child Support Ordered, $357.00 per month, on eleven (11) different occasions. Based on the foregoing, the Court finds that Father had the ability to pay the full amount of Child Support on all of those eleven (11) different occasions at the time the support was due. In addition, the Court finds that Father's failure to pay the full amount of Child Support on those eleven (11) different occasions was willful.

\*\*\*

During the litigation, Father moved to Maine. The Parenting Plan requires that Father provide transportation to and from Maine at the beginning and end of his summer parenting time. At the time of the

divorce, [the Child] was eight (8) years old. Initially, Mother allowed [the Child] to travel on the airplane by herself. However, [the Child] was afraid of flying by herself. Accordingly, in approximately November of 2012, Mother decided not to require [the Child] to fly by herself and, instead, told Father that he would need to fly to Nashville to get her.

The Parenting Plan provides that, for the summer of 2012, Father would have parenting time in Maine for three non-consecutive weeks and Mother would have parenting time for one week in Maine at the end of the first or second week of Father's parenting time. Then, beginning in the summer of 2013, Father is to have parenting time for four non-consecutive weeks in the summer in two-week blocks, with Mother having one week of parenting time in Maine at the end of Father's first two-week block. According to Father's own testimony, the intention of this arrangement was so that [the Child] could visit with her aunt (Mother's sister) and the rest of Mother's family, who also live in Maine, during that period of time.

In the summer of 2012, [the Child] did spend that one week time period with Mother's sister. However, in 2013, Father refused to allow [the Child] to leave his house with Mother's sister. Instead, Father kept [the Child] with him during that time, which was actually Mother's week, and then kept [the Child] another two weeks, for a total of five weeks that summer. Father claimed his reason for not allowing [the Child] to go with her aunt was that he believed the aunt would not return [the Child] to him. Mother testified Father's action in this regard was in retaliation for Mother refusing the previous November to allow [the Child] to fly alone. The Court finds Mother to be credible on this issue. Based on this evidence presented at trial, including the credibility and demeanor of the witnesses, the Court finds, beyond a reasonable doubt, that Father willfully violated this portion of the Final Decree.

Father filed a motion to alter or amend judgment. The Trial Court denied Father's motion with respect to child support, visitation, and excessiveness of sentence.[1] Father filed an appeal to this Court.

---

[1]In its order on Father's motion to alter or amend, the Trial Court makes reference to a 130 day total sentence for Father. We believe this to be an error because in the Trial Court's earlier order it found Father guilty on twelve counts of criminal contempt for a total sentence of 120 days, all but five suspended. Both parties also state in their briefs that the sentence is 120 days rather than 130.

-6-

## Discussion

Although not stated exactly as such, Father raises the following three issues on appeal: 1) whether the Trial Court erred in finding Father guilty beyond a reasonable doubt of criminal contempt for non-payment of child support; 2) whether the Trial Court erred in finding Father guilty beyond a reasonable doubt of criminal contempt for refusing to turn the Child over to maternal relatives for one week of visitation during the summer; and, 3) whether Father's sentence is excessive. Mother attempts to request in the next to last sentence of her brief her attorney's fees incurred on appeal.

In *Moody v. Hutchison* we explained:

> The first issue we will address is Defendant's claim that Plaintiff failed to prove he was guilty of criminal contempt beyond a reasonable doubt. As this Court recently observed in *Barber v. Chapman*, No. M2003-00378-COA-R3-CV, 2004 Tenn. App. LEXIS 111 (Tenn. Ct. App. Feb. 23, 2004), *no appl. perm appeal filed*:
>
>> In a criminal contempt case, the guilt of the accused must be established beyond a reasonable doubt. *Black v. Blount*, 938 S.W.2d 394 at 398 (Tenn. 1996) (citing *Robinson v. Air Draulics Engineering Co.*, 214 Tenn. 30, 377 S.W.2d 908, 912 (Tenn. 1964)). However, on appeal, individuals convicted of criminal contempt lose their presumption of innocence and must overcome the presumption of guilt. "Appellate courts do not review the evidence in a light favorable to the accused and will reverse criminal contempt convictions only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt." *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993) (citing Tenn. R. App. P. 13(e)). Furthermore, appellate courts review a trial court's decision of whether to impose contempt sanctions using the more relaxed abuse of discretion standard of review. *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993).
>
> *Barber*, 2004 WL 343799, at *2, 2004 Tenn. App. LEXIS 111, at *8. *Accord*, *Freeman v. Freeman*, 147 S.W.3d 234, 242 (Tenn. Ct. App. 2003), *appl. perm. appeal denied March 22, 2004* ("Appellate Courts review a trial court's decision to impose contempt sanctions using the more relaxed

-7-

'abuse of discretion' standard of review.…  The court of appeals has 'appellate jurisdiction over civil or criminal contempt arising out of a civil matter.' *See* T.C.A. § 16-4-108(b)…").

*Moody v. Hutchison*, 159 S.W.3d 15, 25-26 (Tenn. Ct. App. 2004).

To sustain a finding of criminal contempt for failure to pay child support, the petitioner must prove beyond a reasonable doubt that the parent had the ability to pay support when it was due and that his or her failure to pay the required support was willful. *Cottingham v. Cottingham*, 193 S.W.3d 531, 538 (Tenn. 2006).

Our Supreme Court has given guidance with regard to discretionary decisions stating:

The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn.

2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d at 42.

> To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at \*3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010).

The first issue we address is whether the Trial Court erred in finding Father guilty beyond a reasonable doubt of criminal contempt for non-payment of child support. Father has two main arguments on this issue: (1) that Mother failed to prove Father's ability to pay; and (2) that Father had a pending petition to correct the amount of child support he was required to pay pursuant to the parenting plan.

With respect to Father's ability to pay, the evidence in the record is that Father receives approximately $1,100.00 per month in Social Security disability. Father's medications cost around $400.00 per month. Mother testified that, during the time child support was due, Father worked side jobs that swelled his income to over $3,000.00 per month. Father denied that he did any work on the side. The Trial Court specifically found Father to be not credible. Mother never makes it clear exactly how she knows what side jobs Father works. However, whether Father worked side jobs or not, the issue remains whether Father had the ability to pay and whether he willfully refused to pay. Even were we to discount Mother's testimony that Father worked on the side, it remains undisputed that Father drew Social Security disability income. Father correctly

notes that it is insufficient in a case of criminal contempt merely to show non-payment of child support. There must be a showing of willfulness.

In our view, the evidence shows, as found by the Trial Court, that Father stopped making child support payments not because of an inability to pay, but rather because he was unhappy with his child support obligation as required in the original parenting plan. Father, in his brief, asserts that "[w]hen Father was no longer receiving alimony from Mother, he did not have the funds with which to pay child support above and beyond what the SSA was paying Mother for support of the child." This contradicts Father's stated rationale at other points in this case. As found by the Trial Court, "[a]t the Hearing on the Contempt Petition, Father claimed he stopped paying the Child Support because he believed the Social Security disability benefits Mother was receiving on behalf of the child should take the place of the Child Support." The Trial Court found further that "Father had the ability to pay all of this Child Support as he was continuing to receive his Social Security benefits from the Federal Government." The evidence does not preponderate against this finding. Father made the $357.00 per month child support payments until late 2011. Father clearly was aware of his obligation as established in the parenting plan. Father continued to receive his Social Security disability payments thereafter. Mother did stop making alimony payments upon Father's remarriage as allowed under the marital dissolution agreement, but the terms of the parenting plan were still in effect. If Father wished to challenge the amount of his child support, he should have done so through the courts rather than simply deciding to stop paying the full amount on his own.

Father then points to a petition he filed to alter his child support obligation. The record does reflect that Father filed a petition regarding his child support in March 2012. However, the record does not reveal the disposition, if any, of this petition.[2] We do not agree with Father's argument that his petition, apparently at least abandoned as best we can tell by the record, means that Father can unilaterally disregard his court ordered child support obligation. We affirm the Trial Court in its finding that Father, despite having the ability to pay, willfully failed to pay the required amount of $357.00 per month in child support on eleven distinct occasions.

The next issue we address is whether the Trial Court erred in finding Father guilty beyond a reasonable doubt of criminal contempt for refusing to turn the Child over to maternal relatives for Mother's one week of visitation in the summer of 2013. The Court found Father guilty on one count for his refusal to turn the Child over to a maternal aunt and uncle for one week during the summer of 2013. The parties' parenting plan

---

[2] Mother's counsel represented that Father dismissed the petition in court. However, we have no evidence in the record one way or the other.

-10-

required that Mother have one week of visitation at that particular time. Father argues that Mother could not delegate her parenting time to her relatives and that he therefore was justified in refusing to turn the Child over to the maternal relatives. Father points out that in 2014, a different judge, Judge Martin, issued an order in this case stating in part that: "Mother may not delegate the middle week of the summer parenting schedule to someone else. The Court expects Mother to be with the child for the entire week of Father's summer parenting time." While Judge Martin's order came one year after the controversy at issue but before the contempt hearing, we find it unjust to find Father's conduct willful and to penalize Father for refusing to turn the Child over to Mother's relatives rather than Mother when a different judge acting in this case ruled expressly that under the parenting plan Mother was not entitled to delegate her week to anyone else. We reverse the Trial Court's finding of criminal contempt against Father on this count.

The final issue of Father's we address is whether Father's sentence is excessive. In *Simpkins v. Simpkins*, 374 S.W.3d 413 (Tenn. Ct. App. 2012) this Court modified a sentence we deemed to be excessive. We stated as follows:

> Although the record clearly established Husband's guilt of all fourteen counts of criminal contempt, that fact alone does not justify the imposition of the maximum sentence of ten days for each conviction or that all of the sentences run consecutively to each other for an effective period of confinement of 140 days. To the contrary, there is a presumption in favor of concurrent sentencing as distinguished from consecutive sentencing. *See State v. Taylor,* 739 S.W.2d 227, 230 (Tenn. 1987) (holding that consecutive sentences should not routinely be imposed in criminal cases and the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved). Further, the record suggests the trial court did not consider the statutory criteria when determining whether Husband's multiple sentences should be served concurrently or consecutively. *See* Tenn. Code Ann. § 40-35-115(a) ("If a defendant is convicted of more than one (1) criminal offense, the court shall order sentences to run consecutively or concurrently as provided by the criteria in this section."). Tennessee Code Annotated § 40-35-115(b) provides that the court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:
>
> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

The only statutory factor that applies to Husband is that he is sentenced for criminal contempt. While this may justify consecutive sentencing, at least in part, this factor alone does not justify the imposition of the absolute maximum sentence of 140 days. As we noted above, "[a]lthough statutory criteria may support the imposition of consecutive sentences, the overall length of the sentence must be 'justly deserved in relation to the seriousness of the offense [s],' and 'no greater than that deserved' under the circumstances." *Sneed*, 302 S.W.3d at 828 (internal citations omitted).

\*\*\*

We do not condone any of Husband's conduct and agree with the trial court that incarceration is appropriate based upon the facts of this case; however, his contemptuous acts do not justify the imposition of the maximum sentence of ten days for each and every count, or consecutive sentencing for all fourteen counts. Having considered the facts of this case, we find the imposition of an effective sentence of 140 days is excessive,

especially because only one of the factors in Tennessee Code Annotated § 40-35-115(b) applies.

*Simpkins*, 374 S.W.3d at 424-25.

The evidence in the record on appeal reflects that Father willfully refused to pay in full his child support as required despite having the ability to pay. While Father objected to the amount of his child support in connection with his Social Security disability income to the Child, there nevertheless was a lawful order requiring Father to pay. Unlike *Simpkins*, here the Trial Court specifically considered the statutory criteria under Tenn. Code Ann. §§ 40-35-115(a) and 40-35-115(b). Father's belief that he should be given credit for the Social Security disability payment to the Child did not permit him to unilaterally stop paying the full amount of child support absent a judicial order. The importance of a parent paying his or her court ordered child support timely cannot be overstated. This policy is supported by the General Assembly's including in Tenn. Code Ann. § 40-35-115(b) the specific provision allowing a court to order sentences to run consecutively if the court finds that "the defendant is sentenced for criminal contempt." Given all this, including considering the totality of all the circumstances of this case, we find no reversible error by the Trial Court and, therefore, Father's sentence of 10 days for each of the eleven counts to be served consecutively is not excessive.

Having reversed one of twelve counts found against Father, we affirm Father's conviction and sentence of 110 days in jail with all but five days suspended. The Trial Court's decision that Father's sentences are to be served consecutively also is affirmed.

As a final matter, we decline to award Mother her attorney's fees incurred on appeal. While Mother asks for her attorney's fees in the next to last sentence of her brief, Mother never set that out as a separate issue in her statement of issues as required. Additionally, Mother makes no argument as to why she is entitled to her attorney fees in this case.

## Conclusion

The judgment of the Trial Court is affirmed, in part, and, reversed, in part, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Tadd Timothy Brown, and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE

-13-