IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 3, 2018

## DEBORAH EVANS WILHOIT v. GARY DENNIS WILHOIT

**Appeal from the Chancery Court for Sumner County**
**No. 2009D-446      Joe Thompson, Judge**

_____

**No. M2017-00740-COA-R3-CV**

_____

This is a post-divorce modification of alimony case. Appellant/Husband contends that the trial court erred by not terminating his alimony *in futuro* and life insurance obligations. We conclude that Husband's alimony obligation should be modified to $500 per month so that the parties can retain enough assets to continue to support themselves for a longer duration. Affirmed as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed as Modified and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

Russell E. Edwards, and Michael W. Edwards, Hendersonville, Tennessee, for the appellant, Gary Dennis Wilhoit.

Patti B. Garner, Hendersonville, Tennessee, for the appellee, Deborah Evans Wilhoit.

### OPINION

### I.      Background

This is the second appeal of this case. *See **Wilhoit v. Wilhoit***, No. M2013-01499-COA-R3CV, 2014 WL 2601566, at *1 (Tenn. Ct. App. June 9, 2014) (***Wilhoit I***). As is relevant to the present appeal, Appellant Gary Wilhoit ("Husband") and Appellee Deborah Wilhoit ("Wife") were divorced on April 29, 2011 after forty-two years of marriage. The final divorce decree provided, *inter alia,* that Husband would pay $4,500.00 per month in alimony *in futuro* and transitional alimony "in the nature of

[Wife's] current or comparable health insurance for the Wife until she reaches the age of sixty-five (65), when at such time she will be eligible for Medicare."[1]

After suffering a heart attack and undergoing quintuple bypass surgery, Husband sold his dental practice in April of 2012. On May 30, 2012, he filed a petition to terminate his alimony obligation, asserting that a substantial and material change in circumstances had occurred as a result of his retirement and that he was no longer able to pay the court ordered support. Wife answered the petition, requesting that the court dismiss the petition and award her attorney fees. The trial court heard Husband's petition on April 9, 2013; on June 4, 2013, the court entered an order denying Husband's request to terminate or modify his alimony obligation. The court found that Husband suffered from chronic heart disease, which precipitated his decision to sell his dental practice and retire in 2012. The court held that Husband's retirement was reasonable and constituted a material and substantial change of circumstances. However, the court also determined that Wife had need for support, and Husband had the ability to pay. In *Wilhoit I*, Husband appealed the ruling of the trial court, asserting that the court erred in refusing to terminate or modify the alimony *in futuro* obligation. In *Wilhoit I*, this Court determined that the trial court did not make any factual findings relative to Husband's assets when it held that Husband had the ability to pay alimony. *Wilhoit I*, 2014 WL 2601566, at *3. The trial court also failed to determine a specific amount that Husband could pay. *Id.* Accordingly, we reversed the dismissal of Husband's petition and remanded the case for reconsideration. On remand, we instructed the trial court to consider each party's assets and the effect of Tennessee Code Annotated Section 36-5-121(f)(2)(B)(ii) in determining Wife's need for alimony, the amount of alimony, and Husband's ability to pay. *Id*.

Following remand, the case remained dormant for almost two years until July 2016, when Appellant filed a motion for a scheduling order. By this time, the original trial judge had retired, and the motion was heard by the Honorable Joe H. Thompson. After reviewing the record, the trial court entered an order on March 9, 2017. The trial court specifically found that Husband's monthly expenses are $3,672.00,[2] and that his only income is his social security benefit in the amount of $2,060.00 per month. As such, Husband's expenses exceed his income by $1,612.00 per month. As to Appellee, the trial court determined that her monthly expenses are $4,045.70, and her only income is social security in the amount of $956.00 per month. The trial court determined that Appellee

---

[1] As discussed in *Wilhoit I*, the trial court amended the final decree to specify that the "health insurance obligation" was $550.00, that the obligation was modifiable, and that it would be reduced when Wife became eligible for medicare/medicaid. The order further provided that the $4,500.00 per month alimony *in futuro* would be reduced by the net amount of Wife's social security benefits when she began receiving them.

[2] At the time of trial, Husband's monthly expenses totaled $9,123.00. However, these expenses included $4,500.00 in alimony payments and insurance for both parties in the amount of $951.00. Since the trial, both parties have reached the age of 65 and are eligible for Medicare.

"is left with an established need of $3,089.70 per month." The trial court found that

> given all of the circumstances, . . . [Appellant] has a continuing ability to pay alimony. Although both parties have assets at their disposal, [Appellant's] assets are nearly double those held by Wife. . . . Under the circumstances, the [c]ourt finds that the current alimony award of $3,540 per month should be reduced by a sum of $550.00 per month to $2,990.00 per month, effective May 2012."

Husband appeals.

## II.    Issues

Appellant raises only one issue for review as stated in his brief:

Whether the trial court erred by not terminating the ex-husband's alimony *in futuro* and life insurance obligations?

In the posture of Appellee, Ms. Wilhoit asks this court to award her attorney's fees and costs on appeal.

## III. Standard of Review

We review the trial court's specific findings of fact *de novo* in accordance with Tenn. R. App. P. 13(d); thus, when the trial court has set forth its factual findings in the record, we will presume the correctness of those findings unless the evidence preponderates against them. ***Mayfield v. Mayfield***, 395 S.W.3d 108, 115 (Tenn. 2012) "Because modification of a spousal support award is factually driven and calls for a careful balancing of numerous factors, a trial court's decision to modify support payments is given wide latitude within its range of discretion." ***Bogan v. Bogan***, 60 S.W.3d 721, 727 (Tenn. 2001) (citations omitted). We decline to second-guess a trial court's decision to modify support absent an abuse of discretion. ***Robertson v. Robertson***, 76 S.W.3d 337, 343 (Tenn. 2002)). An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. ***Gonsewski v. Gonsewski***, 350 S.W.3d 99, 105 (Tenn. 2011) (citing ***Wright ex rel. Wright v. Wright***, 337 S.W.3d 166, 176 (Tenn. 2011); ***Henderson v. SAIA, Inc.***, 318 S .W.3d 328, 335 (Tenn. 2010)).

## IV. Analysis

An award of alimony *in futuro* remains in the court's control for the duration of the award and "may be increased, decreased, terminated, extended, or otherwise

modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A). The party seeking modification of the alimony award "bears the burden of proving that a substantial and material change in circumstances has occurred." *Wiser v. Wiser,* 339 S.W.3d 1, 12 (Tenn. Ct. App. 2010) (citing *Freeman v. Freeman,* 147 S.W.3d 234, 239 (Tenn. Ct. App. 2003)). As noted above, the trial court previously determined that Husband's "retirement was objectively reasonable and constituted a material and substantial change of circumstance." This finding was also affirmed by the trial court on remand. There is sufficient evidence in the record to support Husband's contention that he has a chronic debilitating disease. Thus, we agree that Husband's retirement was objectively reasonable and constitutes a material and substantial change of circumstance.

Having met the threshold requirement of material and substantial change in circumstance, Husband has the burden to establish that the modification is justified based on the same factors that are relevant to an initial award of alimony. *Proctor v. Proctor*, No. M2006-01396-COA-R3-CV, 2007 WL 2471504, at *2 (Tenn. Ct. App. Aug. 31, 2007) (citing *Bogan,* 60 S.W.3d at 730; *Wright v. Quillen,* 83 S.W.3d 768, 773 (Tenn. Ct. App. 2002)). Although the trial court must consider all of the factors outlined in Tennessee Code Annotated Section 36-5-121(i) in determining what, if any, modification may be appropriate, the two most important considerations in modifying spousal support are the financial ability of the obligor to provide the support and the financial need of the party receiving the support. *Bogan,* 60 S.W.3d at 730. Unlike an initial award of support, when deciding whether to modify an award, the need of the receiving spouse and the ability of the obligor to provide support must be given at least equal consideration. *Id.*

In *Wilhoit I*, we determined that Wife had a need of $1,627.00 per month, which is supported by Trial Exhibit 14, Wife's affidavit of income and expenses. The exhibit shows that Wife has monthly expenses of $2,583 and social security income of $956. Thus, deducting income from expenses, we arrived at $1,627. However, on remand from *Wilhoit I*, the trial court increased Wife's monthly expenses by adding $1,300 per month for rent on a storage facility and $162.70 for Wife's cell phone. Accordingly, the trial court concluded that Wife's monthly expenses are $4,045.70. In the first instance, Wife's affidavit of income and expenses lists her food expense, for one person, as $1,100 per month; she avers that her gasoline expense is $300 per month. It is undisputed that Wife does not work, and there is no evidence that she is required to travel to such an extent as to amass a $300 monthly gas bill. Additionally, Wife's bank statements show that she writes thousands of dollars of checks each month to "cash." There is no indication as to what, if any, needs this cash covers.

Wife's affidavit of income and expenses also states that Wife "lives with her mother to help provide daily assistance to her in her 'senior years' and contributes funds to the routine expenses of the household." Tennessee Code Annotated Section 36-5-

121(f)(2)(B)(ii) states that, in all cases where a person is receiving alimony *in futuro* and the alimony recipient lives with a third person, a rebuttable presumption is raised that "[t]he third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded and the court should suspend all or part of the alimony obligation of the former spouse." Tenn. Code Ann. § 36-5-121. In **Wilhoit I**, Husband argued that Wife no longer needed support because she was living with her mother. Although on remand, the trial court found that Appellee "rebutted the presumption that she does not need continuing alimony," it does not explain the basis for this determination. Due to Wife's monthly cash withdrawals, it is difficult, if not impossible, to determine what she pays to meet her needs, what she pays to support her mother, and what her exact need may be. In any event, the trial court is required by Tennessee Rule of Civil Procedure 52.01 to explain its decision.

From our review of the record, Wife had $88,000 in her bank account at the time of trial, and she retained some of the approximately $62,000 in gold awarded to her in the divorce. Although Wife did not testify regarding the value of the remaining gold, she did testify that she sold some of the gold for approximately $48,000, indicating that the remaining gold held far less value than what was awarded to her in the divorce. Husband's assets at the time of trial totaled $181,238. His assets consisted of $96,117 in bank accounts, which included funds remaining from the sale of his dental practice, an IRA valued at $29,000, and approximately $56,121 in gold that he inherited from his mother. The trial court found that

> given all of the circumstances, . . . [Appellant] has a continuing ability to pay alimony. Although both parties have assets at their disposal, [Appellant's] assets are nearly double those held by Wife. . . . Under the circumstances, the [c]ourt finds that the current alimony award of $3,540 per month should be reduced by a sum of $550.00 per month to $2,990.00 per month, effective May 2012.

Using the figures determined by the trial court, Husband's monthly expenses, including his alimony obligation, total $6,662 per month. Husband has a monthly social security income of $2,060, resulting in a monthly deficit of $4,602. Although he retains assets, if Husband paid the alimony as ordered by the trial court, he would have depleted his assets before the end of 2015. In **Bowman v. Bowman**, 836 S.W.2d 563 (Tenn. Ct. App. 1991), this Court concluded that, where the husband-obligor was unable to work and was forced to liquidate all of his assets in order to pay spousal support, (such that he would soon have nothing from which to support himself,) the support obligation should terminate within one year. *Id.* at 568-69. However, in **Bowman**, the recipient-spouse was to receive a large tract of land, which could be sold in order to provide for her support. *Id.* at 569. Here, the parties' cumulative incomes and assets are not sufficient to cover their respective expenses long-term. In cases such as this, the parties must recognize that "[j]ust as a married couple may expect a reduction in income due to

retirement, a divorced spouse cannot expect to receive the same high level of support after the supporting spouse retires." **Bogan v. Bogan**, 60 S.W.3d 721, 729 (Tenn. 2001) (quoting **In re Marriage of Reynolds***, 63 Cal. App. 4th 1373, 74 Cal. Rptr. 2d 636, 640 (Ct. App. 1998)). Like Mr. **Bogan**, Dr. Wilhoit, while able to provide some level of support, cannot continue to pay support at pre-retirement levels without accruing a substantial monthly deficit. From the totality of the circumstances, we conclude that the trial court's order awarding Wife alimony *in futuro* in the amount of $2,990 per month was not supported by the evidence. If left to stand, the trial court's decision will result in Husband liquidating all assets and accruing insurmountable debt. Accordingly, the ruling constitutes a clear abuse of discretion. *See* **Gonsewski v. Gonsewski***, 350 S.W.3d 99, 105 (Tenn. 2011). While we concede that Wife has need of alimony, the question remains what, if any, amount of support Husband has the ability to pay. We now turn to that question.

As set out above, Husband has income of $2,060 per month and expenses of $3,672 per month, not including alimony. Wife has income of $956 and alleged expenses of $4,045.70, which exceeds Wife's expenses as found by this Court in **Wilhoit I**. We, therefore, modify the trial court's award of alimony *in futuro* from $2,990 per month to $500 per month, effective May 30, 2012. This revised award of alimony *in futuro* provides an equitable distribution of income between the parties such that both parties can retain enough assets to continue to support themselves for years to come.

Having modified Husband's alimony obligation, we now address the question of overpayment. As discussed above, Husband sold his dental practice in April 2012 and filed the petition to terminate his alimony obligation in May 2012. While the petition was pending, Husband continued to pay alimony in the amount of $4,500 per month from June 2012 through March 2013. Then, from April 2013 through March 2014, Husband paid monthly alimony in the amount of $3,544 per month. **Wilhoit I** instructed the trial court to address the issue of Husband's overpayment of alimony. Tennessee case law allows an obligor who has overpaid alimony to recoup those funds. *See* **Jekot v. Jekot**, 362 S.W. 3d 76, 85 (Tenn. Ct. App. 2011); **Anderson v. Anderson**, No. M2005-02029-COA-R3CV, 2007 WL 957186, at *7 (Tenn. Ct. App. Mar. 29, 2007); **Barlew v. Barlew**, No. 2004-01654-COA-R3-CV, 2005 WL 954797, at *5 (Tenn. Ct. App. April 26, 2005). While the need of the receiving spouse remains an important consideration in modification cases, the ability of the obligor to provide support must be given at least equal consideration. **Bogan**, 60 S.W.3d at 730. The trial court's order addressed the amount overpaid by Husband with regard to Wife's receipt of her social security income. The trial court's order stated in pertinent part:

> Wife began drawing social security benefits in the amount of $956.00 per month in July 2012. Accordingly, Husband is entitled to an offset for the period in which he overpaid, from July, 2012 through March, 2013, in the total amount of $8,604.00. This offset shall be awarded to Husband by

reducing his alimony payments in the amount of $500 per month until the reimbursement has been fully satisfied.

We affirm the trial court's order with regard to the recoupment of the overage paid while Wife was receiving her social security benefits. However, we remand this case to the trial court to determine what, if any, additional overages shall be reimbursed, and establish a schedule for payment. Our holding does not preclude the parties from presenting further evidence on the amount of the overage, and how, or whether it should be paid. Due to the modification of the trial court's order, we conclude that Husband's life insurance requirement is no longer necessary.

## Attorneys' Fees

As her sole issue, Ms. Wilhoit requests that she be awarded attorney's fees and costs on appeal. Tennessee Code Annotated section 27-1-122 states that:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122. "In considering a request for attorney's fees on appeal, we consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the appeal was taken in good faith, and any other equitable factors relevant in a given case." ***Moran v. Wilensky***, 339 S.W.3d 651, 666 (Tenn. Ct. App. 2010)(citing ***Archer v. Archer***, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). However, the statute must be interpreted and applied strictly so as not to discourage legitimate appeals. ***Henderson v. SAIA, Inc.***, 318 S.W.3d 328, 342 (Tenn. 2010). Dr. Wilhoit was successful in his appeal, and we cannot conclude that this appeal was frivolous or taken solely for delay. Accordingly, we deny Appellee's request for attorneys' fees.

## V. Conclusion

For the foregoing reasons, the judgment of the trial court is therefore modified as stated above, and this matter is remanded to the trial court with instructions to enter a judgment consistent herewith and for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the parties equally, with one-half of the costs assessed against Appellant, Gary Dennis Wilhoit, and his surety; and one-half of the costs assessed against Appellee, Deborah Evans Wilhoit,

for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE